# IN RE FASSETT, Petitioner.

## ORIGINAL.

No. 10. Original. Argued December 14, 15, 1891.— Decided January 11, 1892.

The collector of customs at the port of New York seized a British built steam pleasure yacht, purchased in England by a citizen of the United States, and duly entered at that port, the seizure being for the alleged reason that the vessel was liable to duty as an imported article. Her owner filed a libel in admiralty against her and the collector in the District Court of the United States for the Southern District of New York, claiming the delivery of the vessel to him and damages against the collector. Under process from the court the vessel was attached and taken possession of by the marshal, and due notice was given. The collector appeared personally in the suit, and put in an answer, and the district attorney put in a claim and an answer on behalf of the United States. The substance of the answers was that the vessel was liable to duty as an imported article. The collector applied to this court for a writ of prohibition to the District Court, alleging that that court had no jurisdiction of the suit. This court, without considering the question of the liability of the vessel to duty, denied the writ on these grounds:

(1) The District Court had jurisdiction of the vessel and of the collector;

(2) The question whether the vessel was liable to duty as an imported article was *sub judice* in the District Court;

(3) The subject matter of the libel was a marine tort, cognizable by the District Court;

(4) It being alleged in the answers, that the vessel was detained by the collector "under authority of the revenue laws of the United States," she was, under § 934 of the Revised Statutes, subject to the order and decree of the District Court;

(5) The libellant had no remedy under the Customs Administrative act of June 10, 1890, 26 Stat. 131; and the only way in which the vessel could be brought under the jurisdiction of a court of the United States was by the institution of the libel.

THE case is stated in the opinion

*Mr. Solicitor General* for the petitioner.

*Mr. Elihu Root* (with whom was *Mr. Samuel B. Clarke* on the brief) opposing.

MR. JUSTICE BLATCHFORD, delivered the opinion of the court.

On the 7th of May, 1891, Frederick W. Vanderbilt, a native-born citizen of the United States, residing in the city of New York, purchased in England, from one Bailey, who was her registered owner, a sea-going, schooner-rigged, screw steamship, called the Conqueror, built at Glasgow, Scotland, of the gross tonnage of 371.91 tons, designed, intended and constructed to navigate the high seas, not in the conveyance of passengers or merchandise for hire, but as a pleasure yacht only, which was the only use to which she ever had been put, or was intended to be put, by the purchaser. Bailey delivered to the latter a bill of sale in due form. The yacht was navigated to Halifax and thence to the United States, arriving in the port of New York on July 6, 1891. Her master made due entry of her at that port, and reported her arrival to the collector of customs there, and delivered to him the necessary manifest. The collector thereupon collected light-money upon her, under § 4225 of the Revised Statutes. The master also presented to the collector the said bill of sale, for record and certification. It was recorded in the collector's office, and he endorsed upon it a certificate, and delivered it back, so endorsed, to the master. The certificate was dated July 13, 1891, and was to the effect that the bill of sale was in the form and substance valid and effective in law, and had been duly recorded in his office, and that Vanderbilt was a citizen of the United States.

Prior to July 1, 1891, and to the arrival of the yacht in the waters of the United States, Vanderbilt had been and continued to be a member of the "Royal Mersey Yacht Club," and the vessel was enrolled among the yachts belonging to that club, which is a regularly organized yacht club of Great Britain, which country extends like privileges to the yachts of the United States; and, under § 4216 of the Revised Statutes, she was privileged to enter and leave any port of the United States without entering or clearing at the custom-house or paying tonnage tax.

On the 21st of August, 1891, the Assistant Secretary of the

Treasury notified J. Sloat Fassett, then collector of customs at the port of New York, that the Solicitor of the Treasury had advised the Treasury Department that the yacht was liable to duty under the fair intendment of the tariff act, and directed the collector to take the necessary steps for the appraisement of her for duty, and to have the duty upon her assessed and collected according to law.

On the 27th of August, 1891, in the navigable waters of the United States, in the harbor of New York, off Stapleton, within the jurisdiction of the District Court of the United States for the Southern District of New York, Fassett, without the consent and against the will of Vanderbilt, forcibly took possession of the yacht and deprived Vanderbilt of the use and control of her, and detained her for the enforcement of the payment of duties upon her.

On the 1st of September, 1891, Vanderbilt filed a libel in the District Court of the United States for the Southern District of New York, against the yacht and Fassett, setting forth the foregoing matters, and averring that the seizure of the yacht by Fassett was illegal and wrongful, and solely upon the claim that she was an article imported into the United States, within the fair intendment of the customs-revenue laws, and as such liable to duty; that the duties which accrued upon her importation were unpaid; and that the collector was entitled to keep her in custody until they should be paid or secured; and averring that she was not seized under any claim of authority given by any provision of the laws of the United States relating to commerce and navigation, or of any law providing a penalty or forfeiture. The libel further averred that the yacht was not an imported article within the true intent and meaning of the tariff or customs-revenue laws of the United States; that Fassett, in his official capacity or otherwise, had no authority to keep possession of her; and that the premises were within the admiralty and maritime jurisdiction of the United States and of the court. The libel prayed for process against the yacht and Fassett personally, and for the delivery of the yacht to the libellant, and for the condemnation of Fassett to pay damages and costs.

On the filing of the libel, the proper stipulation for costs was given on the part of the libellant, and process of attachment was issued against the vessel, returnable September 15, 1891, with a monition to Fassett. By the return to that process, it appeared that the marshal had not seized the vessel. On motion, and after hearing both parties, the court issued an *alias* process, on September 24, 1891, returnable October 6, 1891. The marshal made a return to this that he had attached her on September 29, 1891, and given the proper notice. Fassett having resigned his office, Francis Hendricks was appointed collector of customs in his place, and on October 1, 1891, took possession of the vessel and held her for the payment of duties upon her, as an article imported into the United States. As the marshal's return to the *alias* process did not show that the vessel was in his custody, the court issued to. him on October 8, 1891, a third process, returnable October 13, 1891, to which he made return that, on October 8, 1891, within the jurisdiction of the court, he had attached her by taking full and exclusive possession of her; that since such attachment he had been and was in exclusive possession of her under said process; and that he had given due notice.

On the 13th of October, 1891, the United States attorney entered his appearance as proctor for Fassett personally and as late collector, on behalf of the United States, and for Hendricks as collector and claimant, on behalf of the United States. On October 15, 1891, he filed an answer and exceptions for Fassett personally, and a claim, answer and exceptions for Fassett, as late collector, on behalf of the United States, and a claim, answer and exceptions of Hendricks, collector, on behalf of the United States. The substance of those papers was to the effect that the possession of the vessel by the collector was not wrongful, because she was an article imported from a foreign country and subject to duties under the revenue laws of the United States; that the court had no jurisdiction of the matters contained in the libel, because the cause was not a civil cause of admiralty and maritime jurisdiction, and the possession of the collector, on behalf of the United States, was provided for by the revenue laws of the United States, and the

vessel was properly taken or detained by the collector under authority of such laws, and in custody of the law; and a restitution of the vessel to the collector was asked for.

On the 19th of October, 1891, on a petition to this court, filed by Fassett, setting forth the material parts of the foregoing statement, this court issued an order to the judge of the District Court of the United States for the Southern District of New York, returnable November 2, 1891, to show cause why a writ of prohibition should not issue to him, to prohibit him from further holding the aforesaid plea. To this order to show cause the judge has made due return, and the matter has been argued here by the counsel for both parties.

The principal question discussed at the bar was as to whether the Conqueror is liable to duty as an article imported from a foreign country into the United States; but, in the view we take of the case, we do not find it necessary or proper to consider that question, because we think that upon other grounds the writ of prohibition must be denied.

It is contended on behalf of the petitioner, Fassett, that when he, as collector, took possession of the yacht and decided that she was dutiable, the only remedy open to her owner was to pay under protest the duties assessed upon her, and in that way secure possession of her, with the right thereafter, as provided in sections 14 and 15 of the Customs Administrative Act, of June 10, 1890, 26 Stat. 131, 137, 138, to obtain a refund of those duties by taking an appeal from the decision of the collector to the board of general appraisers, and appealing, if necessary, from that board to the Circuit Court of the United States.

The idea embodied in the libel is, that if the yacht was not an imported article, the act of the collector in forcibly taking possession of her was tortious, and, as that act was committed on the navigable waters of the United States, the District Court, as a court of admiralty, had jurisdiction, in a cause of possession, to compel the restitution of her. The libel presents for the determination of the District Court, as the subject matter of the suit, the question whether the yacht is an imported article, within the meaning of the customs-revenue

laws.   The matter is *sub judice* in the District Court.   All it has done so far towards determining the question is to issue process and obtain control of the vessel, so that the question might be formally raised by pleading, and to receive the pleadings of the respondent and the claimant, raising the question. The District Court has jurisdiction to determine the question, because it has jurisdiction of the vessel by attachment, and of Fassett by monition; and for this court to decide in the first instance, and in this proceeding, the question whether the yacht is an article imported from a foreign country, and subject to duty under the customs-revenue laws, would be to decide that question as a matter of original jurisdiction, and not of appellate jurisdiction, while, as a question of original jurisdiction, it is duly pending before the District Court of the United States, on pleadings which put that very question in issue.

In November, 1891, this court was petitioned by one Sturges to issue a writ of prohibition to forbid the District Court of the United States for the Eastern District of New York, sitting as a Court of Admiralty, from further proceeding in certain causes in which it had entertained libels against certain vessels, *in rem*, and had attached the vessels, Sturges claiming title to them, as a receiver appointed by a state court of New York, by a prior title, and having set up such title, in answers to the libels, and alleged want of jurisdiction in the District Court over the vessels.   This court denied the application for the writ without delivering any opinion, but the ground of the denial was that the matter was in course of litigation in the District Court, on due process.

A like view was taken by this court in *Ex parte Easton*, 95 U. S. 68; *Ex parte Gordon*, 104 U. S. 515; *Ex parte Ferry Company*, 104 U. S. 519; *Ex parte Hagar*, 104 U. S. 520; and *Ex parte Phenix Ins. Co.*, 118 U. S. 610, 625, 626.

The subject matter of the libel is a marine tort, cognizable in a cause of possession in admiralty by any District Court of the United States which finds the vessel within the territorial limits of its process.   Constitution, art. 3, sec. 2; Rev. Stat. § 563; *Slocum* v. *Mayberry*, 2 Wheat. 1; *The North Cape*, 6 Bis-

sell, 505; *The J. W. French*, 13 Fed. Rep. 916; *The Haidee*, Stewart's Vice-Adm. Cases (Quebec), 25; *Matter of Blanshard*, 2 B. & C. 244; *The Beatrice*, 37 Law Jour. N. S. Adm. 10; *The Telegrafo*, L. R. 3 P. C. 673, 686; *Burke* v. *Trevitt*, 1 Mason, 96; *L'Invincible*, 1 Wheat. 238; *The Santissima Trinidad*, 7 Wheat. 283; Betts' Adm. Prac. 19; Benedict's Admiralty, § 311; Williams & Bruce Adm. Prac. 17; Cohen's Adm. Law, 32; Henry's Admiralty, §§ 19, 31; *Phila. &c. Railroad* v. *Havre de Grace Steam Tow Boat Co.*, 23 How. 209; *Galena &c. Packet Co.* v. *Rock Island Bridge Co.*, 6 Wall. 213; *Jackson* v. *The Magnolia*, 20 How. 296; *Leathers* v. *Blessing*, 105 U. S. 626.

It is provided by § 2785 of the Revised Statutes, that the owner of imported merchandise shall make entry of it with the collector within a specified time. Section 2963 provides that when merchandise imported into the United States has not been duly entered, it shall be deposited in the public warehouse and there remain. Section 2964 provides that in all cases of failure or neglect to pay the duties within the period allowed by law to the importer to make entry thereof, the merchandise shall be taken possession of by the collector and deposited in the public stores, there to be kept, subject at all times to the order of the importer, on payment of the proper duties and expenses. Section 2973 provides that if the merchandise shall remain in public store beyond one year, without payment of the duties and charges thereon, it is then to be appraised and sold by the collector at public auction, and the proceeds, after deducting for storage and other charges and expenses, including duties, are to be paid over to the importer. Section 934 provides as follows: "All property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

By their respective claims, answers and exceptions, Fassett, as late collector, and Hendricks, as collector, both of them allege that the vessel is "property taken or detained by the

collector of the port, under authority of the revenue laws of the United States, and in custody of the law." Such property, by § 934 of the Revised Statutes, is expressly made subject "to the orders and decrees of the courts of the United States having jurisdiction thereof." On the facts set forth in the libel, the District Court of the United States for the southern District of New York had jurisdiction of the vessel, as property detained by the collector under authority of a revenue law of the United States; and, while it was so in the custody of the law that it must continue to be detained by the collector, subject "only to the orders and decrees of the courts of the United States having jurisdiction thereof," it was subject to such orders and decrees.

As the District Court in the present case has jurisdiction in the premises, we will not prohibit it from proceeding in the exercise of such jurisdiction. A writ of prohibition is not intended to take the place of exceptions to the libel for insufficiency, and will issue only in case of a want of jurisdiction either of the parties or the subject matter of the proceeding.

The libellant has no other remedy than the filing of this libel. He has none under the Customs Administrative Act, of June 10, 1890. 26 Stat. 131. By § 14 of that act, the decision of the collector as to "the rate and amount" of duties chargeable upon imported merchandise is made final and conclusive, unless the owner or importer, within the time limited after the ascertainment and liquidation of duties, shall give notice in writing to the collector, with the reasons for his objections, and, if the merchandise is entered for consumption, shall pay the full amount of the duties and charges ascertained to be due thereon. Upon such notice and payment, the collector is to transmit the papers to a board of three general appraisers, who are to examine and decide the case, and their decision, or that of a majority of them, is to be final and conclusive, except when, under § 15 of the act, an application shall be filed in the Circuit Court of the United States. By § 15 application may be made to that court for a review of the questions of law and fact involved in the decision of the board of general appraisers; and, on the evidence taken by that

board, and further evidence, if given, that court is to hear and determine such questions of law and fact "respecting the classification of such merchandise and the rate of duty imposed thereon under such classification." By § 25 the right of action is taken away to sue a collector or other officer of the customs on account of any rulings or decisions as to the classification of the merchandise or the duties charged thereon, or the collection of any dues, charges or duties on, or on account of, such merchandise, or any other matter or thing as to which, under the act of June 10, 1890, the owner or importer may be entitled to appeal from the decision of the collector or other officer, or from any board of appraisers provided for in the act.

The appeal provided for in § 15 brings up for review in court only the decison of the board of general appraisers as to the construction of the law, and the facts respecting the classification of imported merchandise, and the rate of duty imposed thereon under such classification. It does not bring up for review the question of whether an article is imported merchandise or not; nor, under § 15, is the ascertainment of that fact such a decision as is provided for. The decisions of the collector from which appeals are provided for by § 14 are only decisions as to "the rate and amount" of duties charged upon imported merchandise, and decisions as to dutiable costs and charges, and decisions as to fees and exactions of whatever character. Nor can the court of review pass upon any question which the collector had not original authority to determine. The collector has no authority to make any determination regarding any article which is not imported merchandise; and if the vessel in question here is not imported merchandise, the court of review would have no jurisdiction to determine any matter regarding that question, and could not determine the very fact which is in issue under the libel in the District Court, on which the rights of the libellant depend.

Under the Customs Administrative Act, the libellant, in order to have the benefit of proceedings thereunder, must concede that the vessel is imported merchandise, which is the very question put in contention under the libel, and must make entry of her as imported merchandise, with an invoice and a

consular certificate to that effect, and thus estop himself from maintaining the fact which he alleges in his libel, that she is not imported merchandise.

The vessel in this case was not seized for forfeiture. If she had been, that seizure would be one to be followed by a suit for forfeiture, instituted by the United States, and thus she would be brought within the jurisdiction of a court of the United States. But she is not to be prosecuted in court by an affirmative proceeding instituted by the United States to recover the duties upon her as an imported article, which are claimed by the United States; and thus the only way in which she can be brought under the jurisdiction of a court of the United States is by the institution of the libel in question.

*The writ of prohibition is denied.*