## THE WHIPPOORWILL.

### THE HIAWATHA.

#### Nos. 1853, 1854.

District Court, D. Maryland.
Sept. 19, 1931.

986

John H. Skeen, of Baltimore, Md., for libelant.

Simon E. Sobeloff, U. S. Atty., and Charles G. Page, Asst. U. S. Atty., both of Baltimore, Md.

Samuel Hoffberger, of Baltimore, Md., for purchaser at marshal's sale.

CHESNUT, District Judge.

The matter now before the court in both the above-entitled cases, arises on exceptions to ratification of sales in the respective cases. Exceptions to the sale were filed by the United States of America on the ground that the sale price was grossly inadequate and also that the yachts were respectively in the custody of the collector of customs consequent upon the seizure and pending the filing of libel proceedings for forfeiture for violation of the customs laws at the time of the attachment in the original libel proceedings in this case; and for that reason it is alleged in the exceptions the yachts were not subject to libel by the individual private plaintiffs for labor and supplies for which the lien was claimed by the respective plaintiffs.

The exceptions in both cases were heard jointly on September 11, 1931. Certain testimony was submitted and other facts were stipulated or agreed to orally by counsel for the respective parties in open court.

### Finding of Facts.

I accordingly find the facts in this case to be as follows: On May 12, 1931, an assistant customs agent formally seized the Hiawatha and on May 13, 1931, the Whippoorwill, in Maryland waters, for three separate violations of the customs laws as follows: (1) For illegal unloading of cargo; (2) for illegal transshipment of cargo; (3) for lack of manifest. The investigation indicated to the customs agent that both boats were engaged in an illegal attempt to smuggle intoxicating liquor into the United States. The investigation also indicated to the customs agent that there had been a breach of the navigation laws as well as of the customs laws but the seizure was intentionally by him not made under the navigation laws by reason of complications supposed to be therein involved with reference to informer's fees.

The assistant customs agent immediately notified the collector of customs at Baltimore of the seizure of the boats and the grounds for the seizure. The yachts themselves were towed to Baltimore and placed by the collector of customs in the physical charge of the Coast Guard at Curtis Bay, who held them for the collector of customs.

While the assistant collector of customs was still investigating certain facts in relation to the transaction and before any libel for forfeiture against the boats had been filed by the collector of customs, the plaintiff in this case, Alphonse Sutter, filed the ordinary libel proceedings against the yachts respectively on May 21, 1931, and on May 23, 1931. These proceedings were the ordinary admiralty proceedings in rem which did not disclose the fact that the yachts were in the custody of the collector of customs. Process issued in due course and was served by the marshal by going to Curtis Bay where the boats were moored or fastened to the wharf, and seeing an enlisted man and asking permission to go on board. The enlisted man communicated with the commander of the Coast Guard saying that the marshal wanted to go on the boats, and received permission for him to do so. The commander did not at the time know the purpose of the marshal's errand and apparently made no specific inquiry about it, seemingly thinking that it was a part of the legal proceedings with regard to the boats. Specifically at the time the commander did not know that the proceedings were at the instance of the individual private plaintiffs and unconnected with the prior seizure of the boats for the violation of the customs laws. The usual monitions against the boats were posted on them but no individual summons or monition was served on the commander of the Coast Guard or on the collector of customs. This service was made by the marshal in each case and return made by the marshal in due course. The marshal did not place a watchman on the boats, which continued to remain in the physical possession of the Coast Guard. No claim or appearance on behalf of the vessel and no answer or exceptions to the libel having been filed by anybody, a decree pro confesso was entered in the cases on July 3, 1931; and thereafter in due course an order for the sale of the boats was passed with directions for public sale after ten days' notice by publication.

Up to this time there was nothing in the proceedings to advise the court that the boats were in the custody of the collector of customs consequent upon a seizure. But ap-

pearance of publication for the sale attracted the attention of the commander who thereupon communicated with the marshal inquiring by what authority he was undertaking to sell the boats which were in the possession of the collector of customs consequent upon seizure for violation of the customs laws. The marshal replied that he was acting under the usual process of court. The commander then reported the matter to the collector of customs who in turn reported the matter to the district attorney, and promptly thereafter and within a few days prior to the sale, which was advertised to take place on July 22, 1931, the district attorney prepared and submitted to Judge Soper an intervening petition on behalf of the United States of America setting up the facts of the prior seizure of the boats and that they were in the custody of the collector of customs at Baltimore and claiming forfeiture of the yachts under and by reason of the provisions of section 4377 of the U. S. Revised Statutes (46 USCA § 325), and by reason of the provisions of section 3450 of the U. S. Revised Statutes (26 USCA §§ 1181, 1182), and alleging that at the time the government was considering to exercise its right under the provisions of Act March 3, 1925, 43 U. S. Statutes at Large, 1116, c. 438 (19 USCA § 522 et seq.), to have the yachts delivered to the Treasury Department for use in enforcing the customs laws or the National Prohibition Act in lieu of the sale thereof. The petition prayed a revocation of the sale and "that the United States Marshal for the District of Maryland be ordered to hold said gas yacht Whippoorwill (and Hiawatha) subject to the further order of this court." No order was then passed upon the petition but counsel agree that Judge Soper expressed his willingness to postpone the sale provided the accrued costs were paid or secured by the government. Counsel for the libelant was also advised if the costs were not paid and the sale proceeded in due course, his client would take the risk of a possibly invalid sale. It being found impracticable for the district attorney to provide the costs, the sale took place as advertised, resulting in a sale of the yachts to Frank S. Lloyd in the amount of $2,250 for the Whippoorwill, and $2,675 for the Hiawatha, and the net proceeds of the sale, less expenses, to wit, $2,581.21 in the case of the Hiawatha and $2,165.72 in the case of the Whippoorwill, were paid over by the marshal to the clerk of the court, and are still held by him. On June 5, 1931, at the instance of the collector, and in compliance with the statutory requirements in such cases, the boats had been appraised by the official appraiser at $15,000 for the Whippoorwill and $25,000 for the Hiawatha.

The sale having been reported to the court for ratification, the United States, by the United States attorney, on July 24, 1931, filed exceptions to ratification of the sale on the ground that the boats were not subject to attachment in the admiralty proceeding because they were at the time in the custody of the collector of customs pending formal libel proceedings for forfeiture for violation of the customs and/or navigation laws, and because the sale price was grossly inadequate. No testimony was offered in support of the alleged inadequacy of the sale price other than the contrasting of the sale price with the appraisal price. The government does not now press the alleged inadequacy of price in opposition to the ratification of sale.

### Conclusions of Law.

Upon the above facts, I conclude as a matter of law that the exceptions to the sale must be sustained for the reason that, in my view of the applicable law, the yachts were not subject to attachment at the instance of the plaintiff in this admiralty proceeding. My reasons for this conclusion are as follows:

An examination of the applicable United States statutes shows that there are now in force (and for many years statutes of the same general purport have been in force), statutes making very complete provision for the subject of importation of merchandise at ports of entry of the United States, and regarding the conduct of vessels within the waters of the United States and within twelve miles from the borders. It is provided by the statutes that violations of some of these regulations subject the offending ship or boat to forfeiture, and it is made the duty of the agents of the government connected with the Treasury Department, in the enforcement of the customs laws, and of the Department of Commerce in charge of the enforcement of the navigation laws, to seize the vessels which have committed violations of the law. After seizure it is the duty of the government agents to report the matter to their respective superiors and with respect to violations of the customs laws it is further provided that in the event the appraised value of the vessel is less than $1,000, the collector of customs, after notice by advertisement and in the absence of intervening claims, may declare a forfeiture and make a sale and convey title to the vessel to the purchaser. If, however, the value of the vessel is appraised at more than $1,000, a plenary proceeding

by libel against the vessel for forfeiture is to be filed in the United States District Court of appropriate jurisdiction. Such a proceeding involves prescribed public notice and an opportunity to claimants to intervene and assert their claims against forfeiture of the vessel.

Without undertaking to recite each and all of the applicable statutes, particular reference may be made to the following: title 19, USCA (subject, Customs Duties), §§ 1453, 1586, 1587, providing for forfeiture of vessels for violation of the laws against loading or unloading or transshipment of cargo, and section 1584, providing penalties for failure to produce a proper manifest; also USCA, title 46, § 325, providing for forfeiture of a vessel employed in any other trade than that in which she is licensed (this particular vessel I find was licensed as a pleasure yacht and according to the customs agents, was found to be carrying a cargo of liquor). Section 1594 of the same title (title 19) provides that a vessel which has become subject to a penalty for violation of the customs laws—revenue laws—may be seized and proceeded against summarily by libel to recover same. Section 1604 provides that it shall be the duty of the United States attorney to conduct proper proceedings for forfeiture. Section 1605 provides that the custody of all vessels seized under the provisions of the customs laws or laws relating to navigation "shall be placed and remain in the custody of the collector of the district in which the seizure was made *to await disposition according to law*." Section 1606 provides for the official appraisement of the vessel. Sections 1607–1609, inclusive, provide for summary forfeiture and sale after public notice where the value of the vessel is less than $1,000. Section 1610 provides that if the value is more than $1,000 the collector shall report the matter to the United States attorney for the institution of proper proceedings for condemnation of such property. Section 1613 provides that persons claiming any vessel or interest therein which has been forfeited and sold may, within three months, apply to the Secretary of the Treasury for relief in certain cases. Section 1618 makes further provision for administrative relief in such matters. Section 523 provides that any vessel forfeited by decree of any court for violation of the customs laws may, "in lieu of the sale thereof under existing law, be ordered by the court, upon application of the head of the department by which the seizure is made, to be delivered to the Department

of Justice for use in the enforcement of title 27, or any other act for the enforcement of the Eighteenth Amendment, or to the Treasury Department for similar use of the enforcement of the customs laws."

Title 28, USCA, § 747, provides as follows: "All property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

The phraseology of this statute would seem more directly to be applicable to personal property on land than vessel property on waters, generally subject to the admiralty jurisdiction, but nevertheless it has been intimated that by analogy the section is applicable to vessels. See De Lima v. Bidwell, 182 U. S. 1, 179, 180, 21 S. Ct. 743, 45 L. Ed. 1041.

It is seen from this review of the statutory laws of the United States that a complete scheme of enforcement of the customs and navigation laws is provided in the statutes; which includes the seizure of vessels violating the customs and navigation laws and their summary forfeiture by administrative proceedings if the value is less than $1,000 and by judicial proceedings for forfeiture by libel in admiralty if the value exceeds $1,000  Particularly it is to be noted that the statutes provide that, prior to the summary sale or judicial decree of forfeiture, the vessels are to remain in the custody of the collector of customs and they are said to be "in the custody of the law subject only to the orders and decrees of the Courts of the United States having jurisdiction thereof." The question now presented is, therefore, simply whether the District Court of the United States in admiralty proceedings at the suit of a lien claimant can attach through the marshal a vessel so in the possession of the collector of customs by process against the boat in rem only and without making the collector individually a party to the suit and without setting up any claim that the vessel was improperly or tortiously seized by the collector. My conclusion is that such an attachment is not legally effective.

The purchaser in this case expects, of course, to obtain a good title to the boats free of claim of any third persons, including the United States. I do not think the admiralty proceeding in this case is sufficient to give the purchaser such a title. It would, therefore, be an injustice to him to confirm

the sale and possibly subject him to further adverse proceedings by the government. But, apart from this latter consideration, I think the statutory law herein reviewed fully expresses the high public policy of the government in the enforcement of the customs and navigation laws, and it would be subversive of this law to ratify the sale in this proceeding.

The consideration is pressed upon me by counsel for the libelant that the admiralty jurisdiction is very broad and comprehensive and is given to the District Courts by the Constitution of the United States and is without exception. But while the grant of admiralty jurisdiction is given by the Constitution (Const. art. 3, § 2, cl. 1), its exercise is subject to be regulated by Congress. And Congress has in numerous instances passed acts vitally affecting the exercise of the jurisdiction, as, for instance, the act defining, and to some extent extending, the scope of the lien given for materials and supplies to vessels, the act providing a limitation to the shipowners' liability, and the act with respect to liability for negligent deaths of seamen. It seems entirely clear, therefore, that Congress would have the power to exempt vessels under certain conditions from the ordinary admiralty process for libel. An act of this kind would not be lacking in constitutional power and the only question would be the construction and intended scope of the act. The particular question, therefore, would seem to be, not whether Congress has the power to exempt from libel process at the suit of a maritime lien claimant vessels which have been seized by the United States for violation of the customs laws, but only whether this is the legal effect of the acts that have been passed. It is also clear that apart from the statutes certain maritime property is nevertheless, on the grounds of public policy, exempt from libel by maritime lien claimants, as, for instance, the property of the United States, or of a state, or the property of a municipal corporation. See volume 1, Benedict on Admiralty, § 303; and the author adds to the same category: "Property in the hands of the Collector of Customs may not be seized except as stated in Section 300." The section last referred to cites the cases of 250 Tons of Salt (D. C.) 5 F. 216; Jorgenson v. 3173 Casks of Cement (D. C.) 40 F. 606. These cases indicate that merchandise in the hands of the collector of customs and *being held for duty* may be attached, *subject, however, to the claims of the government.*

In Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028, it was held that a court of admiralty may not seize a ship which is in the custody of a state sheriff under attachment. And conversely where a ship is in the custody of a collector after arrest for slavery but before formal seizure for forfeiture, a state court attachment is not effective. The Slavers (Reindeer) 2 Wall. 383–402, 17 L. Ed. 911. In Harris v. Dennie, 3 Pet. 292, 7 L. Ed. 683, it was held that goods in the custody of the collector of customs was not liable to an attachment by a private creditor of the importer.

In Ex parte Fassett, 142 U. S. 479, 12 S. Ct. 295, 35 L. Ed. 1087, it was held that a yacht bought abroad and brought to New York and registered and then seized by the collector of customs for import duty might be libeled by the owner in a suit in admiralty against the vessel and also against the collector individually, where the claim was based on an unlawful seizure by him and where the statutes, at least at that time, did not provide procedure to determine the question whether the yacht was subject to import duties, other than by the general admiralty procedure adopted. It is to be noted, however, in that case that the suit was not only in rem against the ship but also individually against the collector and individual notice was served on him in personam. For later proceedings in the same case see "The Conqueror," 49 F. 99 (D. C. N. Y. 1892) and Id., 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937.

In the more recent federal case law practically the same question now being considered was presented to and decided by the Third Circuit Court of Appeals in the case of The Motor Boat No. L-7869, 21 F.(2d) 594, where, in a proceeding which very closely parallels the present case, it was held that the admiralty court had no jurisdiction to seize and order a sale of a vessel in the custody of the collector and awaiting disposition under summary forfeiture proceedings, the value of the vessel in that case being less than $500. In that case, while the procedure for summary forfeiture and sale was in progress, a separate proceeding in admiralty was filed by a lien claimant under which the vessel was seized and subsequently sold to a purchaser and the sale ratified and the money distributed. Later under the proceedings for forfeiture and sale the boat was sold to another purchaser, who brought libel proceedings claiming ownership against the purchaser under the admiralty sale at the suit of the lien claimant. It was held that the title un-

990

der the official sale was good and the purchaser under the private sale had to yield title to the boat, because the District Court sitting in admiralty did not have jurisdiction.

The case of The Pilot, 43 F.(2d) 491, 493, in the Circuit Court of Appeals for this Circuit, was a case where a vessel had been seized by the customs officials, and the United States filed a libel against the boat claiming her forfeiture for unlawful transshipment of merchandise within four leagues of the coast of the United States and on the ground that the vessel had engaged in an unlawful trade contrary to the terms of her license. The libel was dismissed by the District Court after hearing but the decree was reversed by the Court of Appeals. It appears the owner had intervened as claimant and pleaded his innocence in the matter of the violations but the court held this was no defense to the forfeiture under the customs and navigation laws although it might have been if the seizure had been under the National Prohibition Act. The court, by Judge Northcott, said: "Congress has seen fit to vest the authority to grant relief from forfeiture of this character to innocent owners by executive as distinguished from judicial action, and it has always been an exclusive function of an executive officer to exercise the power of remission and mitigation." It seems to me that the inferences or implications from this decision (which, of course, is imperative law in this proceeding) are inconsistent with upholding the sale in this case.

In Gillam v. Parker, Collector of Customs, 19 F.(2d) 358, 360, in the District Court for the Eastern District of South Carolina, Judge Cochran held that a bill in equity would not lie against government officials for unlawful seizure of a foreign vessel on the high seas and continuing to hold her unlawfully, on the ground that the suit, if maintained at all, would have to be in admiralty. Judge Cochran said: "It is not permissible for a person whose property is seized for violation of the revenue laws by an officer of the government to bring a bill in equity in advance of the due and proper institution of libel proceedings, and thereby substitute a remedy in equity for the ordinary proceeding for condemnation."

In The Kathryn, District Court for the Eastern District of New York, 50 F.(2d) 193, 194, it appears that there was a situation somewhat parallel to that in the case now under consideration. There a motorboat was seized by the Coast Guard on August 31, and delivered to the collector of the

port of New York but it was not until October 21, 1930, that the usual marshal's notice of arrest and forfeiture was published, the libel for forfeiture having been filed October 3, 1930. Meanwhile, the plaintiff on September 25, 1930, filed a libel against the vessel for a claim against her under which the vessel was sold and distribution of the proceeds of sale was made in satisfaction of the claim of the libelant and the balance of the net sale price remained in the registry of the court. In the libel for the forfeiture the District Court ordered a forfeiture, but said: "I think that in all equity this balance may be considered to be that which is left of the res sought to be forfeited herein." There seems to have been no point raised in this case as to the title of the purchaser or as to the effectiveness of the libel although the decision in effect seems to have treated the sale as good. It is to be noted, however, that apparently the proceeds of the sale had been actually distributed before the forfeiture proceeding was adjudicated. It is possibly true that the decision in effect is contrary to the view that I entertain of this matter but as above indicated, the point here considered seems not to have been raised or discussed in the case of The Kathryn.

In the case of The Mary A. (United States of America v. Martinson) 52 F.(2d) 982, United States District Court for the Eastern District of New York, May 28, 1931), District Judge Campbell ordered the Mary A forfeited for violation of the National Prohibition Act. Intervening petitions of certain claimants were filed. The court found that all of the claims were for services or materials sold in good faith, after inquiry and in the belief that the Mary A was engaged in the fish and scallop trade. All liens were allowed with priority over the forfeiture. It was, however, further stated as follows: "As the Secretary of the Treasury has requested that said vessel be turned over to the Government or one of its officers or agents, for the use of the Government, an opportunity should be afforded the Government to elect whether it will pay said liens, and therefore three weeks should be allowed to it for that purpose, and the United States Marshal must be directed not to give notice of sale before the expiration of that time." See 52 F.(2d) 985, 1931 A. M. C. page 1220. It is to be noted the forfeiture proceedings in this case were under the National Prohibition Act and not for violation of the customs laws. See, also, to the same effect, The Antigostine (United States of America v. American Oil Screw

Antigostine) United States District Court for the Eastern District of New York, November 5, 1930, reported in 44 F.(2d) 170, 1930 A. M. C. page 2035; and in the same court see the case of The Leona M. Sproul (Gorton-Pew Fisheries Co. v. Schooner Leona M. Sproul), decided February 25, 1930, 52 F.(2d) 644, 1930 A. M. C. page 584. There also the forfeiture was under the National Prohibition Act, and the government's claim was held subordinate to supply claims.

Counsel for the libelant relies strongly on the recent cases of The Thomaston (D. C. Md.) 26 F.(2d) 279; and The Ermis (D. C. S. D. Fla.) 33 F.(2d) 763. Both these cases held that maritime lien claims of innocent claimants were entitled to priority over the government's claim for forfeiture. But the question now under consideration did not arise in either of the cases because in both the jurisdiction of the court over the vessels had been originated and established by libel proceedings for forfeiture brought by the government. Whether the decision of the Circuit Court of Appeals for this Circuit in The Pilot, 43 F.(2d) 491, is inconsistent with the decision in these cases, it is not necessary now to determine.

It is suggested in this case by counsel for the libelant that the government has unduly delayed proceedings for forfeiture and has not, even up to the present time, definitely determined whether to proceed for a sale of the vessel or for the delivery of the vessel for the use of the government. In this connection, it is doubtless true that the existing complications of procedure would probably have been avoided if the commander of the Coast Guard had paid more attention to the visit of the marshal when he libeled the boat. But with respect to the instant matter before the court, that is, whether the sale should be confirmed, I do not think the inactivity of the commander under the circumstances can warrant an estoppel against the government or be treated as an abandonment of its claim for forfeiture. As soon as the attention of the collector of customs was called to the matter he acted promptly in communicating with the district attorney and the latter immediately brought the matter to the attention of the court and filed an intervening petition by the government asking a revocation of the order of sale. This was filed on July 22d. I do not think further delay than this can be attributed to the government officials in this matter because having formally called the subject-matter to the attention of the court by the intervening petition asserting the right to a forfeiture, the district attorney probably felt that a separate and independent proceeding should not be undertaken pending the disposition of the intervening petition. The government's delay in the matter is, I think, therefore, of no important legal consequence in this proceeding unless it were possible to infer from it an abandonment of the seizure. Under circumstances not greatly dissimilar as to the amount of delay, it was held in the case of The Motor Boat No. L-7869 (C. C. A.) 21 F.(2d) 594, that there had been no abandonment by the collector of customs; and on this point the case of The Kathryn (D. C.) 50 F.(2d) 193, is to the same effect.

However I wish to make it plain that I am not at the present time undertaking to adjudicate the question whether the yachts are subject to forfeiture for any cause, or to rule on the validity of any possible defences that may hereafter be interposed to the claim for forfeiture, or if forfeiture is decreed, as to what disposition should be made of the vessels, whether by sale or by transfer outright to the government for the use of the Treasury Department or the Department of Justice. These questions have not been fully argued, and furthermore, it is possible that in response to the notice of forfeiture proceedings other intervening claims may be filed by parties not now represented. Specifically, it is not now intended to express any opinion as to whether, if the yachts are subject to forfeiture, the lien claims of the plaintiffs in this case will be prior or subordinate to the forfeiture. I have considered the point as to the government's delay only in connection with the matter now being passed on, that is, the setting aside of the sale.

As already pointed out, the intervening petition of the government does not ask for a dismissal of this proceeding. The prayer of the petition is "that the United States Marshal be ordered to hold said gas yacht Whippoorwill (and Hiawatha) subject to the further order of this court." Although the attachment of the yachts by the marshal was ineffective as against the claims of the government, it does not necessarily follow that the court is now without jurisdiction in the premises. By the statutes already quoted, the yachts, while in the possession of the collector, are stated to be in the custody of the law, and the filing of the intervening petition by the government puts the boats now clearly under the jurisdiction of this court. Furthermore, the forfeiture proceedings by the government must be conducted in this Dis-

trict court in admiralty. There seems, therefore, to be no valid reason why this present suit should be dismissed and a new and independent proceeding now started by the government. It would seem that the government's intervening petition for forfeiture already filed should be amended to more formally and definitely state the present claims and contentions of the government with respect to the yachts, and what disposition thereof is demanded. Thereafter, proceedings should be had in accordance with the customary practice in libel forfeiture proceedings. The present plaintiffs and any other intervening claimants will, of course, have full opportunity to assert their rights with respect to the disposition of the boats, or with respect to the proceeds of sale of the boats, if sold.

Accordingly, I will sign orders in both cases which will provide as follows: · (1) That the sales be set aside. (2) That the full purchase price paid by the purchaser shall be returned to him. The expenses of the sale which have been deducted by the marshal from the purchase price must be advanced by the plaintiffs at the present time as a part of the costs of the cases. Final disposition of the costs can await further order of the court. (3) That the orders for sale heretofore passed in these cases shall be rescinded. (4) That the government proceed within ten days with its formal forfeiture proceedings in accordance with the usual practice; and, on failure of the government so to proceed, then an order may be applied for by the plaintiffs in these cases for the surrender by the collector of customs of the yachts to the marshal of the court, with further leave to the plaintiffs in that case to reapply for an order of resale of the yachts.