(C. D. 234)

Spud's Place *v.* United States

United States Customs Court, First Division

(Decided October 14, 1939)

*Lawrence & Tuttle* (*Frank L. Lawrence* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before EVANS, BROWN, and McCLELLAND, Judges; BROWN, J., dissenting

McCLELLAND, Presiding Judge: These protests are directed against the decision of the collector of customs at the port of Honolulu, T. H., imposing a tax at the rate of 3 cents per pound under the provisions of section 601 (c) (8) of the Revenue Act of 1932 as amended by section 701 of the Revenue Act of 1936, on the cocoanut oil contained in laundry soap brought to Honolulu from the Island of Guam.

At the outset it should be noted that in the brief submitted on behalf of the plaintiff it is stated:

Plaintiff concedes that, if the merchandise were taxable at all, said rate of 3 cents per pound was properly collected.

Plaintiff's claim for exemption from the said tax is based upon two contentions: (1) That merchandise coming to the United States from Guam is not "imported" within the meaning of the tax imposing provisions of the Revenue Act of 1932, *supra*, and (2) that section 601 (b) (5) of the Revenue Act, *supra*, does not apply to merchandise from Guam.

Section 601 (a) and (b) of the Revenue Act of 1932, so far as pertinent, reads as follows:

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES.

(a) In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States unless treaty provisions of the United States otherwise provide.

(b) The tax imposed under subsection (a) shall be levied, assessed; collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act, except that—

\*      \*      \*      \*      \*      \*      \*

(5) such tax \* \* \* shall be imposed in full notwithstanding any provision of law granting exemption from or reduction of duties to products of any possession of the United States \* \* \*.

In view of the fact that the issue raised by the plaintiff's claim is that the merchandise was not "imported," we find it necessary to decide whether this court has jurisdiction to decide that issue.

As recently as October 30, 1935, the third division of this court held that merchandise brought into the United States from the Virgin Islands was not imported from a foreign country; that the tax assessed thereon under the provisions of the Tariff Act of 1930 was not a duty but an internal revenue tax, and that this court therefore had no jurisdiction to decide the issue as to whether or not the assessment was properly made. (*Alpert* v. *United States*, T. D. 47973.) In arriving at this conclusion the Third Division cited as controlling the cases of *in re Fassett*, 142 U. S. 479, and *DeLima* v. *Bidwell*, 182 U. S. 1.

The case of *DeLima* v. *Bidwell*, *supra*, was one of a series of cases well known as The Insular Tariff Cases, and involved the following

facts: Sugar was brought from Puerto Rico to the United States in 1899 following the cession of the island to the United States by Spain under the terms of the Treaty of Paris. The collector of customs at the port of New York sought to assess duties on such sugar under the provisions of the Tariff Act of 1897 which provided for a duty upon articles, among which was sugar "imported from foreign countries." The importer claimed that the sugar was not dutiable under the provisions of the tariff act, *supra*, since it was not imported "from a foreign country."

Among the matters involved in the case was the nature of the remedy available to the plaintiff—whether the proper procedure was by suit *in assumpsit* against the collector in the State or Federal Circuit Court or by protest to the collector and transmittal thereof to the Board of General Appraisers (now this court) for determination of the issues.

It was held that where the issue was whether an article had been imported or not the Board of General Appraisers had no jurisdiction over the case. It must be pointed out, however, that the Supreme Court did not hold that the mere fact that the goods had been brought to the United States from a possession thereof of itself deprived the Board of jurisdiction to determine the issues. The court reached its conclusion rather upon the basis of its decision *in re Fassett*, 142 U. S. 479, which, in effect, defined the jurisdiction of the Board of General Appraisers under the provisions of the Customs Administrative Act of 1890. The holding of the court in the *DeLima* case, *supra*, based upon its decision in the *Fassett* case, *supra*, was that when the issue was whether goods had been imported or not the remedy did not lie within the provisions of the Customs Administrative Act, *supra*.

Since the *Fassett* case was, so to speak, the parent case on the subject of the jurisdiction of the Board of General Appraisers and, hence, of this court, it is pertinent to examine that case and the act upon which it was based in order to determine whether subsequent legislative enactment has changed the effect thereof.

The facts, so far as pertinent, in the *Fassett* case were as follows: A steam pleasure yacht of British origin was purchased in England by an American citizen and sailed over to this country under her own power. She came into the collection district the headquarters of which were the port of New York. The collector at that port was informed by the Assistant Secretary of the Treasury that the yacht was liable to duty and was directed to take steps for her appraisement and assessment of duties thereon. The collector thereupon seized the yacht and detained her to enforce the payment of the duties. The owner filed a libel in the District Court for the Southern District of New York maintaining that the yacht was not an imported article within the meaning of the tariff laws of the United States.

The collector applied to the Supreme Court for a writ of prohibition to the District Judge and alleged that the latter had no jurisdiction since the owner's remedy lay by paying the duties and filing a protest under the provisions of the Customs Administrative Act of 1890 against the imposition of the duties with the collector which, if the collector adhered to his original decision to assess duty on the yacht, would be forwarded to the Board of General Appraisers for determination.

The court held:

(1) That the collector of customs had no authority to make any determination regarding any article which was not imported merchandise.

(2) That the only decisions of the collector from which appeals were provided to the Board of General Appraisers were decisions as to the rate and amount of duties chargeable upon imported merchandise.

(3) That the proceedings taken under section 15 of the Customs Administrative Act of 1890, *supra*, on appeal from the decision of the Board of General Appraisers brought up for review only the decision of the Board as to the construction of the law and the facts respecting only the classification of imported merchandise and the rate of duty imposed thereon under such classification.

By reason of (2) and (3) the court held that the legal remedy under the Customs Administrative Act, *supra*, was not adequate.

A dictum in the opinion stated that if the person who brought the disputed merchandise to the United States had made entry thereof as imported merchandise with an invoice and a consular certificate to that effect, he was estopped from maintaining the claim that the goods were not imported merchandise.

With regard to point (1) in the *Fassett* case, *supra*, it will be noted that under section 601 (a) of the Revenue Act of 1932 a tax is imposed on certain imported merchandise; that under subsection (b) thereof the tax is "for the purposes of all provisions of law relating to the customs revenue" *to be treated as a duty imposed under the provisions of the Tariff Act of 1930*, and that under subdivision (5) of subsection (b) such tax is extended to merchandise coming to the United States from its possessions. The collector in the case at bar, therefore, had statutory authority to make a determination as to the merchandise involved since it came from a possession of the United States.

We deem essential to a consideration of point (2) in the *Fassett* case a comparison of the pertinent provisions of the Customs Administrative Act of 1890 and the Tariff Act of 1930 relating to the jurisdiction

of this court. Printed in parallel columns for easy comparison they are as follows:

SEC. 14, Customs Administrative Act of 1890:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive * * * [unless protest is filed].

SEC. 514, Tariff Act of 1930:

* * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall * * * be final and conclusive * * * [unless protest is filed].

It will be observed that the 1890 Act provided for review of the collector's decisions only "as to the rate and amount of duties chargeable upon imported merchandise." The words which follow, i. e.,

* * * including all dutiable costs and charges, and as to all fees and exactions of whatever character * * *

were interpreted by the Supreme Court as coming within the scope of "the rate and amount of duties chargeable." Examination of the 1930 act, however, shows that the scope of review has been enlarged so that all decisions of the collector whereby duties or taxes are levied under customs laws upon imported merchandise, including the legality of the orders and findings upon which the decisions are based, may be made the subject of review by this court. By its very terms section 601 of the Revenue Act of 1932 is a customs law, and it follows that this court has complete jurisdiction to review the collector's action imposing taxes in the nature of customs duties thereunder.

With regard to point (3), *supra*, the Supreme Court found that the remedy provided in the Customs Administrative Act of 1890 by protest to be determined by the Board of General Appraisers was not an adequate remedy at law in the *Fassett* case since no appeal was provided to a higher tribunal except—

* * * as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification.

This limitation no longer exists. Section 195 of the Judicial Code, as amended, now provides as follows:

The Court of Customs and Patent Appeals shall exercise exclusive appellate jurisdiction to review by appeal, as herein provided, final decisions by the United States Customs Court in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classifications, and the fees and charges connected therewith, and all appealable questions as to the jurisdiction of said court, and all appealable questions as to the laws and regulations governing the collection of the customs revenues * * *.

and provision is made for appeal from the decisions of the Court of Customs and Patent Appeals to the United States Supreme Court.

So far as the dictum in the *Fassett* case, *supra*, relating to estoppel is concerned, we observe that the sugar involved in *DeLima* v. *Bidwell*, *supra*, had been duly entered prior to the commencement of the action and the court held that nevertheless the action there decided would lie. We also note that article 265 (*b*) of the Customs Regulations of 1931, in force and effect at the time of entry herein, provides as follows:

Merchandise arriving in the United States from Guam and American Samoa must be entered * * *.

It is therefore manifest that since the plaintiff in the case at bar followed the requirement of the customs regulation quoted above it cannot be held that he is estopped by reason of having made such entry to deny that the merchandise in issue was imported merchandise.

From the foregoing we are convinced that by reason of subsequent legislative enactment the decision in the *Fassett* case with regard to the jurisdiction of this court no longer represents the law on the subject, and that the jurisdiction of this court embraces a review of all acts of the collector done under color of his office in the assessment of duties or imposition of taxes as customs revenue.

Having thus decided that this court has jurisdiction to determine the issue raised, we proceed to a consideration of the merits.

Much of what we have already said with regard to the jurisdictional phase of this case applies to the contention made by plaintiff that merchandise from Guam is not "imported." In brief, however, it may be stated that the taxes imposed under section 601 of the Revenue Act of 1932 are, by the terms of subsection (b) thereof, declared to be customs duties. Subdivision (5) of said subsection (b), so far as pertinent to the issue herein, reads:

(5) such tax * * * shall be imposed in full notwithstanding any provision of law granting exemption from or reduction of duties to products of any possession of the United States * * *.

There can be no question, upon a reading of the foregoing, but that it was the congressional intent to extend the imposition of the taxes

or duties so levied to articles brought to the United States from its possessions. That such extension was within the power of Congress to make cannot be doubted under the decisions in the Insular Tariff Cases, especially *Downes* v. *Bidwell*, 182 U. S. 244, wherein it was held that the imposition of taxes in the nature of import duties on goods coming to the United States from such of its possessions as have not been incorporated as part of the United States does not contravene the provisions of Article 1, Section 8, of the Constitution, requiring duties, imposts, and excises to be uniform "throughout the United States," nor the provision in section 9 of the same article regarding commerce between the States.

At the conclusion of the brief filed by plaintiff's counsel the observation is made that a seeming anomaly would result from the imposition of taxes under the provisions of the Revenue Act of 1932 in full upon articles brought to the United States from its possessions while similar articles imported from Cuba would be entitled to a preferential discount of 20 per centum. As has been often stated by this and other courts, however, such a situation calls for legislative rather than judicial action.

For the reason hereinbefore stated the protests are overruled. Judgment will issue accordingly.

### DISSENTING OPINION

Brown, Judge: This suit against the United States was brought at Honolulu, Hawaii, and there tried. The plaintiff herein seeks to recover certain customs taxes claimed to have been illegally exacted on a shipment of merchandise from Guam.

According to the writer's understanding there never heretofore has been any kind of tariff upon merchandise shipped from Guam to other parts of this country. Assuming that the Constitution, including the uniformity clause and the clause preventing preferences to particular ports, has never been extended to Guam, Congress would have the right to tax with a tariff duty merchandise shipped from Guam to other parts of this country. However, the question here is not a question of power but a question of intent to take this unusual course. It should not be done by indirection, or narrow construction, when it was so easy, by the use of direct words mentioning specifically merchandise shipped from Guam, for Congress to accomplish that result.

The language claimed to do so by the majority opinion can be given full effect as applying it to merchandise shipped from the Philippines to other parts of this country, upon which we understand tariffs have usually been laid with certain partial or complete exemptions, without affecting merchandise from Guam. The whole or partial exemptions spoken of would seem to refer to such Philippine merchandise. There

is a marked difference between never having taxed at all a class of objects and exempting in whole or in part particular objects from a taxed class. We do not speak of an exemption from something which does not exist.

In such circumstances, and keeping in mind, as we always must, the universal rule that the citizen is never taxed unless the language of the taxing statute certainly and definitely includes his property, it seems safer to say here that Congress did not intend a radical change in previous policy by the language used.

Such conclusion is in strict conformity with the principle of *DeLima* v. *Bidwell*, 182 U. S. 1. There it was held that, in the absence of a statute directly taxing it, merchandise shipped from Puerto Rico to New York was not taxable under our general tariff because Puerto Rico was not a foreign country, but part of this country.

It is certainly doubtful whether the language relied on by the majority was intended to cover this merchandise shipped from Guam and, in spite of some recent departures by lower courts, the legal rule still obtains that *all* questions of doubtful construction are to be resolved in favor of the importer.

Judgment should issue in favor of the plaintiff for the amount of taxes taken.