**MACROTEL INTERNATIONAL CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–397C.**

United States Court of Federal Claims.

Sept. 22, 1995.

## ORDER

WEINSTEIN, Judge.

Defendant has moved to dismiss the complaint for lack of jurisdiction, on the grounds that exclusive jurisdiction lies in the United States Court of International Trade. The motion is granted.

### Background

At the time an importer places imported goods into the commerce of the United States, it must deposit with the United States Customs Service ("Customs") the duties and fees estimated to be payable on the goods, 19 U.S.C. § 1505(a), including estimated antidumping duties for goods the United States Department of Commerce ("Commerce") has preliminarily found to be sold in the United States for less than fair value, 19 U.S.C. § 1673b(d)(2). Upon the final computation of the duties due on imported goods, known as liquidation, Customs collects any additional duties or refunds any excess duties. 19 U.S.C. §§ 1500, 1505(b), 1673f.

In January 1989, Commerce commenced an antidumping investigation of certain small business telephone systems from Korea ("the Korean phone systems"). *Initiation of Antidumping Duty Investigation: Certain Small Business Tel. Sys. and Subassemblies Thereof From Korea*, 54 Fed.Reg. 3517, 3518 (1989). In August, Commerce, having preliminarily determined that, between July and December 1988, the Korean phone systems had been sold in the United States for less

than fair value, ordered Customs to suspend liquidation of imports of the systems and to require deposit of a 9.33% estimated antidumping duty on future imports. *Preliminary Determination of Sales at Less than Fair Value: Certain Small Business Tel. Sys. and Subassemblies Thereof From Korea,* 54 Fed.Reg. 31980, 31983 (1989). Commerce made a final determination of dumping in December, found the margin to be 13.4%, and ordered Customs to continue the suspension of liquidations. *Final Determination of Sales at Less than Fair Value: Certain Small Business Tel.Sys. and Subassemblies Thereof From Korea,* 54 Fed.Reg. 53141, 53152 (1989); *see also Antidumping Duty Order and Amendment to the Final Determination of Sales at Less than Fair Value; Certain Small Business Tel. Sys. and Subassemblies Thereof From Korea,* 55 Fed.Reg. 4215 (1990).

In March 1992, Commerce made a final determination that, between August 1989 and January 1991, the margin was 0.02%, which was deemed *de minimis. Certain Small Business Tel. Sys. and Subassemblies Thereof From Korea; Final Results of Antidumping Administrative Review,* 57 Fed.Reg. 8298, 8301 (1992).

Commerce made a final determination in August 1993 that the margin for the period of February 1991 to January 1992 was 0.03%, which was deemed *de minimis. Certain Small Business Tel. Sys. and Subassemblies Thereof From Korea; Final Results of Antidumping Administrative Review,* 58 Fed. Reg. 44501, 44504 (1993).

Plaintiff Macrotel International Corporation imported the Korean phone systems from July 1988 to January 1992, and deposited estimated duties, including (after August 1989) estimated antidumping duties, thereon. Between September 1990 and February 1993, Customs erroneously liquidated fifteen entries of plaintiff's Korean phone systems, assessing the merchandise with, and withdrawing from the deposited duties, duties equal to the amount of the deposited estimated duties, totalling $111,161.22. Plaintiff contends that it was entitled to a full refund.

In September 1994, over a year and a half after the last liquidation, plaintiff sought reliquidation under 19 U.S.C. § 1520(c), which requires reliquidation requests to be filed within a year of the liquidation date. In October, Customs acknowledged that the liquidations were erroneous, but stated that they had become final because plaintiff had not timely (within ninety days of the date of liquidation or the denial of a timely-requested reliquidation, 19 U.S.C. § 1514(c)(3)), filed a protest. In January 1995, plaintiff filed an administrative protest.

In June 1995, plaintiff filed suit in this court, alleging that the erroneous liquidations breached an implied-in-fact contract and constituted a taking of property without just compensation.

In July 1995, Customs denied the administrative protest on the grounds that neither it nor the reliquidation request was timely.

### Discussion

 This court lacks jurisdiction over "any civil action within the exclusive jurisdiction of the Court of International Trade." 28 U.S.C. § 1491(b). The Court of International Trade has exclusive jurisdiction over, *inter alia,* "any civil action commenced to contest the denial of a protest ... under ... the Tariff Act of 1930," 28 U.S.C. § 1581(a) (1988), and "any civil action commenced against the United States ... that arises out of any law of the United States providing for [either] ... tariffs, duties, fees, or other taxes on the importation of merchandise," 28 U.S.C. § 1581(i)(2) (1988), or "administration and enforcement with respect to matters referred to in[, *inter alia,* 28 U.S.C. § 1581(a) ]," 28 U.S.C. § 1581(i)(4).[1] Thus, matters that are protested or "protestable," *National Customs Brokers & Forwarders Ass'n of Am. v. United States,* 723 F.Supp. 1511, 1514 (Ct. Int'l Trade 1989) (citing *K Mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 190–91, 108 S.Ct. 950, 959–60, 99 L.Ed.2d 151 (1988)), are within that jurisdiction. *See Conoco, Inc. v. United States Foreign–Trade Zones Bd.,* 18 F.3d 1581, 1586–89 (Fed.Cir.

1. The predecessor court, the Customs Court, also had exclusive jurisdiction over customs matters under the Tariff Act of 1930. 28 U.S.C. § 1582 (1976).

1994); *Vivitar Corp. v. United States*, 761 F.2d 1552, 1558–60 (Fed.Cir.1985), *cert. denied*, 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). Because liquidations and reliquidations are protestable matters, 19 U.S.C. § 1514(a)(5), (7), this case falls within the exclusive jurisdiction of the Court of International Trade.

Plaintiff cannot escape this conclusion by pleading the dispute as a breach of contract or taking, rather than a protested or protestable matter. *See, e.g., J.C. Penney Co. v. United States Treas. Dep't*, 439 F.2d 63, 66–68 (2nd Cir.) (citing, *e.g., Cottman Co. v. Dailey*, 94 F.2d 85, 88 (4th Cir.1938)), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971); *Argosy Ltd. v. Hennigan*, 404 F.2d 14, 16–20 (5th Cir.1968) (citing, *e.g., Ex parte Fassett*, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087 (1892)); *cf. Nichols v. United States*, 74 U.S. (7 Wall.) 122, 131, 19 L.Ed. 125 (1868) ("Can it be supposed that Congress, having carefully constructed a revenue system, with ample provisions to redress wrong, intended to give to the taxpayer and importer a further and different remedy? [¶] The mischiefs that would result, if the aggrieved party could disregard the provisions in the system designed expressly for his security and benefit, and sue at any time in the Court of Claims, forbid the idea that Congress intended to allow any other modes to redress a supposed wrong in the operation of the revenue laws, than such as are particularly given by those laws.").[2]

### Conclusion

For the reasons stated above, defendant's motion to dismiss is granted. The Clerk shall dismiss the complaint.

---

**2.** Moreover, the complaint would be dismissed for lack of jurisdiction even if this case were not within the exclusive jurisdiction of the Court of International Trade, for failure to exhaust administrative remedies by filing a timely administrative protest is a jurisdictional prerequisite. *Omni U.S.A., Inc. v. United States*, 840 F.2d 912, 913–14 (Fed.Cir.), *cert. denied*, 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 34 (1988); *American Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1551 (Fed.Cir.1983) (exhaustion prerequisite), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984).