## THE BLAIRMORE I.

### PORTLAND SHIPPING CO., Limited, v. 1152 CASES OF WINE.

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 211.

1. **Admiralty ⊕=60—Libel must state allegations of fact relied on in support of suit.**

Under general admiralty rule 22, a libel must state the various allegations of fact on which libelant relies in support of his suit.

2. **Pleading ⊕=8(6)—Allegation that ship was unlawfully withheld from possession held mere conclusion.**

Allegation in libel for possession of steamship that it was "unlawfully withheld from the possession of libelant" held a mere conclusion.

3. **Admiralty ⊕=117—Circuit Court of Appeals will grant motion for amendment to answer, and consider same, when that is only way it can ascertain nature of case.**

Circuit Court of Appeals will grant motion for amendment to answer, overruled by lower court, and consider the amendment as embodied in answer, where that is only means whereby it can have before it nature of case, notwithstanding that libelant may be prepared to prove falsity of answer.

4. **Admiralty ⊕=28—Owner, whose possession of movable property has been changed by maritime tort, or breach of maritime contract, may vindicate title by proceeding in rem.**

Where possession of movable property has been changed against the right of a true owner by maritime tort, or breach of maritime contract, owner may vindicate his title in a court of admiralty by a proceeding in rem.

5. **Admiralty ⊕=60—Libel for possession of ship and cargo, without allegation of maritime tort, or breach of maritime contract, is defective.**

Libel by owner of ship for possession of cargo of wine, against collector, with no allegation of any maritime tort, or breach of maritime contract, is on its face fatally defective.

6. **Intoxicating liquors ⊕=251—Statute providing that property taken under revenue law shall be irrepleviable, and deemed to be in "custody of the law," does not apply to seizure under National Prohibition Act.**

Rev. St. § 934 (Comp. St. § 1560), providing that property taken under any revenue law shall be irrepleviable, and deemed to be in the "custody of the law," does not apply to ship and cargo seized under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), citing Words and Phrases, First and Second Series, Custody of the Law.

7. **Intoxicating liquors ⊕=251—Remedy of owner of ship and cargo seized under National Prohibition Act is by suit for condemnation.**

Remedy of owner of ship and cargo seized under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), is contest of validity thereof in a suit for condemnation, and he cannot maintain possessory suit.

8. **Intoxicating liquors ⊕=251—Ship captured in violation of National Prohibition Act not entitled to safe conduct, beause it was taken into port in wrong district.**

That Coast Guard officials, seizing ship and cargo under National Prohibition Act, tit. 2, § 26 (Comp. St. Ann. Supp. 1923, § 10138½mm), made mistake in taking it into Connecticut port, instead of New York Harbor, would be no reason for decree granting a safe conduct to 12-mile limit, in order to prevent any new seizure or capture.

Appeals from the District Court of the United States for the District of Connecticut.

Libels by the Portland Shipping Company, Limited, against the steamship Blairmore I, her tackle, etc., and Harvey P. Bissell, Collector, and against 1,152 cases of wine, etc., in which the United States filed an answer. From a decree for libelant, defendants appeal. Reversed and remanded, with directions.

Before HOUGH, HAND, and MACK, Circuit Judges.

On the same date the Portland Company, a corporation of Nova Scotia and owner of the Blairmore I, filed in the court below two libels of possession, one to repossess itself of the steamer and the other to similarly reobtain the cargo thereof, which consisted wholly of intoxicating liquor.

The allegations of the libel were that libelant owned the Blairmore I, that Bissell, as collector of customs for the district of Connecticut, was in possession thereof and of her documents also, that such possession was wrongful, that possession had been demanded of Bissell and by him refused, that the steamer, etc., was within the jurisdiction of the lower court and within the civil and maritime jurisdiction of the United States.

Similar allegations were made in the second suit in respect of said cargo of liquor, and it being represented to the District Court that exactly the same question was presented in each of these cases the causes were consolidated.

The answer in the suit against the steamer and Bissell consisted of an admission of each and every one of the above-enumerated allegations, but concluded, after such admission with a prayer that the libel be dismissed.

It does not appear that any one ever claimed the steamer, and the answer, instead of being by Bissell, collector, was tendered by the United States of America as "respond-

ent," by an Assistant United States Attorney for the district of Connecticut.

Thereupon the court below on motion granted the prayer of the libel and directed that "the collector of customs for the district of Connecticut and/or the United States marshal for the district of Connecticut, their respective agents and servants, and any and all persons in whose possession the above-named vessel Blairmore I may be, and they and each of them hereby are, directed and ordered to release and deliver unto the possession of the said Portland Shipping Company, Limited, or to its proctor and attorney in fact, Louis Halle, without any maintenance, custody or other charges, the said vessel Blairmore I, her engines, tackle, apparel, etc."

And it was further decreed that, "when the said vessel Blairmore I shall proceed to sea, that the collector of customs for the district of Connecticut shall have the right to place a guard aboard said vessel until the said vessel shall have reached a point 12 miles distant from the coast of the United States of America."

Thereupon the United States moved for a reargument and for leave to amend its answer, so as to set up in substance that, although Bissell, collector, was in possession of the Blairmore I and her cargo, she had been seized by a vessel of the Coast Guard at a point within seven-eighths of a mile from Fisher's Island, and within the territorial waters of the United States, and the jurisdiction of the District Courts of the Southern and Eastern Districts of New York; the Blairmore I being at the time laden with the cargo of liquor above referred to, which she was transporting illegally under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), and was illegally importing into the United States without permit, and that at the time of such seizure the Blairmore I was not in distress.

This amendment the court below refused, and explained the meaning of the last paragraph of its decree by stating that the libelant was entitled to an order that would permit it to obey the law if it chose; that the act of the Coast Guard vessel in seizing the Blairmore I was an unlawful one, and that it "ought not to be supported by an order of court which will result in a reseizure of ship and cargo and afford them no opportunity to pursue a lawful purpose."

Thereupon the United States took this appeal, assigning for error substantially the action of the court in refusing to direct the redelivery of the vessel to the libelant at the point of her seizure by the Coast Guard vessel.

John G. Sargent, of Ludlow, Vt., Mabel Walker Willebrandt, of Washington, D. C., A. W. Henderson, of Pittsburgh, Pa., and John Buckley and John A. Danaher, Asst. U. S. Attys., both of Hartford, Conn., for the United States.

Louis Halle, of New York City, for respondent.

HOUGH, Circuit Judge (after stating the facts as above). It is a lengthy job to ascertain the legal propositions hidden in the mistakes and misunderstandings that constitute the apostles herein. Decree was given on the pleadings; yet the answer, after admitting everything alleged in the libel, prayed for dismissal. This was in effect a peremptory exception or general demurrer, though we are not aware that such procedure has ever before been attempted. If, however, the libel be examined, it is seen to be a violation of every principle of pleading as laid down in general admiralty rule No. 22.

[1, 2] The case is on the instance side, and the rule requires that a libel shall state the various allegations of fact upon which the libelant relies in support of his suit. The single attempted statement of fact in the libel is that the Blairmore I was "unlawfully withheld from the possession of the libelant." This is a mere conclusion, and may be compared with a libel for collision that confined its fact allegations to a complaint that respondent's vessel unlawfully collided with that of libelant.

Nothing in the record shows that any claim was ever made to the ship, and Mr. Bissel, who was sued in personam (cf. rule 19), never appeared. But the United States answered, for what reason or by what right the pleadings wholly fail to show. On the pleadings alone, no cause of action was well pleaded, for no one could even guess why suit was brought. An attempt was made to better this situation by the amendment above set forth, and the proceedings upon that motion to amend have been brought before us by the apostles.

[3] This being a new trial, we shall grant the motion and consider the amendment as embodied in the answer, because it is only by that means we can have before us the nature of the case, or any statement of how or why ship and cargo were or were thought to be in the custody or within the control of the collector. The necessity for this rectifica-

tion of the record appears from both briefs filed, which assume that the court is aware of the nature of the litigation. It is of no moment that libelant may be prepared to prove the falsity of the answer in regard to the place of capture, the illegality of cargo, or the purposes of the voyage. Answer as amended reveals the position assumed by the United States, the reasons for seizure, and the existing governmental intent with regard to that which was seized.

Thus the question arises whether these two possessory suits (now consolidated) are maintainable. The jurisdiction of the American admiralty in possessory suits may be said to rest upon the reasoning of Story, J., in The Tilton, 5 Mason, 465, Fed. Cas. No. 14,054; for the authoritative assertion of such jurisdiction in Ward v. Peck, 18 How. 267, 15 L. Ed. 383, is no more than an assent to Justice Story's doctrine.

[4] The Supreme Court has never defined the jurisdiction of admiralty in possessory suits respecting chattels other than vessels; but the reasoning of Lowell, J., in Five Hundred and Twenty-Eight Pieces of Mahogany, 2 Low. 323, Fed. Cas. No. 4,845, has received professional acquiescence (cf. Benedict [5th Ed.] p. 102), and the result thereof is that, "where the possession of movable property has been changed against the right of the true owner by a maritime tort or by the breach of a maritime contract, the owner may vindicate his title in a court of admiralty by a proceeding in rem."

[5] In the present suit regarding the cargo of whisky, there was no allegation by libelant of any maritime tort or any breach of a maritime contract; wherefore such libel on its face was fatally defective, because it is a prerequisite to the exercise of jurisdiction that the court should be advised of the facts by which the libelant thinks himself within the very limited powers of admiralty over the subject-matter. Whether, if proper allegations had been made, a capture by the Coast Guard within the territorial waters of the United States should be regarded as a maritime tort is a matter concerning which we express no opinion; for we shall consider the larger question whether the collector's admitted possession or custody did not, under the, circumstances, prevent the use of a possessory suit to recover both ship and cargo.

It has been universally agreed that in our admiralty a suit for possession is the substantial equivalent of proceedings in replevin. Benedict, ubi supra. We know that this seizure was made by the Coast Guard under the authority of title 2, § 26, of the National Prohibition Act (Comp. Stat. Ann. Supp. 1923, § 10138½mm), by which the Coast Guard official (inter alios), having discovered a "person in the act of transporting in violation of the law intoxicating liquors in any * * * water * * * craft, * * * it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law, [and he] shall take possession of * * * water craft."

The question under consideration would be answered by Rev. St. § 934 (Comp. St. § 1560), if the arrest of vessel and cargo had been "under authority of any revenue law," for by the statute what is so seized "shall be irrepleviable, and shall be deemed to be in the custody of the law," and that chattels in such custody are always irrepleviable was settled in Covell v. Heyman, 111 U. S. 176, 4 S. Ct. 355, 28 L. Ed. 390. But it cannot be said that the Prohibition Act is one of revenue, or that, in the absence of statute extending the definition to seizure not under judicial process, the general rule applies. Cf. Words and Phrases, First and Second Series, sub nom. "Custody of the Law."

[6] The question then becomes this: In the absence of a statutory prohibition upon suits for possession or actions in replevin, can this ship and cargo be rescued by legal proceedings, such as these were intended to be, from a governmental seizure made as alleged by answer? That a possessory suit would lie for a vessel detained by the collector, not for condemnation or penalty, but to enforce the payment of a tax, was held in Re Fassett, 142 U. S. 479, 12 S. Ct. 295, 35 L. Ed. 1087, and the reason for such holding was that the shipowner sought to be taxed had no remedy under the law other than a possessory suit. This is not true of seizures for condemnation, for in order to enforce the governmental claim it is necessary for the proper officials to bring libels of condemnation, to allege and prove that the seizure was lawful, and owners are entitled to appear, claim, and contest the governmental accusations.

Let it be admitted that, until process is issued and the marshal seizes the res proceeded against (in this case ship and/or liquor), the chattels are not in custodia legis, but are held for the purpose solely of instituting such legal proceedings—a thing impossible in the Fassett Case, supra. The legal analogy here is that which the government unsuccessfully used in Re Fassett, viz. the Embargo Act of 1808, 2 Stat. 499. By that

statute seizure of both vessels and goods intended for foreign parts in violation of the act was directed by the statute; condemnation of both ship and cargo was to follow, usually in the case of the ship and under certain specified circumstances in that of the cargo.

Under that act it was held in Slocum v. Mayberry, 2 Wheat. 1, at page 9 (4 L. Ed. 169): "The party supposing himself aggrieved by a seizure cannot, because he considers it tortious, replevy the property out of the custody of the seizing officer, or of the court having cognizance of the cause. * * * If the seizing officer should refuse to institute proceedings to ascertain the forfeiture, the District Court may, upon the application of the aggrieved party, compel the officer to proceed to adjudication or to abandon the seizure."

[7] In the century and more that has elapsed since the embargo, seizures such as those under that statute have been rare until the passage of the National Prohibition Act. But the rule is the same. The remedy of the party who feels himself aggrieved by seizure is to contest the validity thereof in the suit for condemnation; he cannot "short-circuit" the orderly course of law by instituting suit of his own, though he may force the hand of the government officers and compel them promptly to proceed in the way laid down by law. This line of demarcation was thoroughly recognized, not so much in Blatchford, J.'s, opinion in Re Fassett, supra, as in the brief of Mr. Elihu Root of counsel; for the whole basis of his successful argument was that the collector's seizure for an alleged tax was not and never had been pretended to be a seizure "under any law providing for a penalty or forfeiture." This is such a seizure, and whether it is wrongful or not can only be determined in a proper suit for condemnation.

Thus it was the duty of the court below, notwithstanding the extraordinary form of pleading, to investigate its own jurisdiction. If that had been done, it would have appeared that no jurisdiction existed. We note the direction in what is in effect the final decree below (though called an "order of release") that the collector shall be entitled to maintain a person on board the vessel until it arrives at the now notorious 12-mile limit.

If one looks at the language of the order or decree, and nothing else, the direction is inexplicable; it is impossible to see why the collector should be entitled to put a guest on the Blairmore I until she reaches the high seas, without any suggested method of taking him off. But, if the gloss contained in the opinion be observed, the permission was intended to be a passport or safe-conduct to both vessel and cargo until she reached a point confessedly beyond the jurisdiction of the United States. We are not aware of any justification for such a direction. Nothing is pointed out to us excusing the order.

[8] From the briefs and argument (not from the apostles) we learn that the Coast Guard officials were thought to have made a mistake in taking what they had captured into a Connecticut port, instead of New York harbor. They got into the wrong district, and the intent of the order was to prevent any new seizure or capture. If there had been a pleading showing the existence of this alleged error, that would have been no reason for granting a safe-conduct; in the absence of any such information contained in the pleadings, there was even less excuse.

We conclude that on the pleadings the libel was open to peremptory exception, and if the pleadings are reformed, possessory suit does not lie for a res governmentally held for forfeiture by judicial process.

The decree is reversed, and the cause remanded, with directions to dismiss the libel or libels, without costs in any court.