**THE BESSIE MAC.**
No. 13932.

District Court, W. D. Washington, N. D.
Nov. 18, 1937.

Bogle, Bogle & Gates, of Seattle, Wash., for libelant.

G. W. S. Hamilton, Atty. Gen., and L. C. Brodbeck, Asst. Atty. Gen., for respondent.

NETERER, District Judge (after stating the facts as above).

It is obvious from section 5692, Rem.Rev.Stat. of Washington, vessels, nets, etc., unlawfully used may be seized and forfeited to the State, and by section 5693, statute, supra, fishing without license

with appliances is a misdemeanor; and appliances may be seized and forfeited to the State; arrest of the fisherman (crew) is a proceeding in personam and forfeiture of the vessel, etc., is a procedure in rem; conviction in the criminal case (personal) cannot operate as a forfeiture of the vessel. The Three Friends, 166 U.S. 1, at page 49, 17 S.Ct. 495, 41 L.Ed. 897. Under due process each must have its or his "day" in court. A plenary suit against the vessel is essential. Standard Carpet Co. v. Bowers, Collector (D.C.) 284 F. 284.

The state court has no admiralty jurisdiction as claimed in the "Petition" filed in the state court. The lien, or right of forfeiture claimed, is not founded on any rule of maritime law, but is dependent upon a right, if any, granted by state or federal statute or United States Constitution.

The origin of admiralty regulations of navigation and commerce was the power of the admiral. Anciently, he was a great officer, governed the Navy, and adjudicated all maritime matters, and his power in navigation and commerce extended over the navigable waters of all parts of the world. The origin is in doubt, probably Asiatic, unknown in Europe before the time of the Holy Wars. The admiral judged all matters relative to merchants and mariners pursuant to the law of Oleron, which was taken, so far as it was available, from the Rhodian law, which was promulgated about seventy years after the reign of Solomon, King of Israel. Justice Holmes in The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 47, 49 L.Ed. 236, said: "The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." The autocratic power of the admiral by long period of melioration and unfolding through development of common rules and usage which grew out of conduct and habits of those engaged in maritime commerce found expression in the equitable system of admiralty law now in force among all nations. Each nation has its admiralty rules and laws. The Supreme Court in The Lottawanna, 88 U.S. (21 Wall.) 558, at page 572, 22 L.Ed. 654, said: "Maritime law can hardly be said to have a fixed and definite form as to all the subjects which may be embraced within its scope. * * * No nation regards itself as precluded from making occasional modifications suited to its locality and the genius of its own people and institutions."

All admiralty rules and laws are dependent on laws of the United States. The Lottawanna supra; The Elfrida, 172 U.S. 186, 19 S.Ct. 146, 43 L.Ed. 413. Rights and liens created by state statute in favor of a party are administrated in admiralty.

The admiralty extends to the high seas and also to navigable rivers, whether tidal or not (The Moses Taylor, 71 U.S. [4 Wall.] 411, 18 L.Ed. 397, and to rivers and lakes which are highways of commerce (The Daniel Ball, 77 U.S. [10 Wall.] 557, 19 L.Ed. 999).

The Constitution of the United States (article 3, § 2, cl. 1) grants judicial power to the United States District Court in all cases of admiralty and maritime jurisdiction. Originally, the admiralty jurisdiction was but another phase for the power of the admiral, next in power to the monarch, and extended to nonadmiralty cases "beyond the sea." The ancient and time-honored privilege of admiralty (Edward's Ad. Juris. 17), Smart v. Wolf, 3 T.R. 348, does not obtain under our Constitution. English Stat. 2 Henry IV, c. 2, provides: " * * * Admirals shall not intermingle anything done in the realm but only of a thing done upon the sea." The added word "Maritime" in our law restricts admiralty to maritime service. In The Eclipse, 135 U.S. 599, at page 608, 10 S.Ct. 873, 876, 34 L.Ed. 269, the court says: "The jurisdiction embraces all maritime contracts * * * and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts * * * and services purely maritime." And, by the same token, the like grants and restrictions apply to torts.

The state court is impotent in this case from any viewpoint; it clearly appearing that it proceeds in form and substance against a res, upon the high sea, and it also proceeds against a res, not within the jurisdiction of the state court of Clallam county, since the res, a water craft, is upon navigable water; and also within the jurisdiction of the superior court of King county in the State. The proceeding is not against a person or entity to enforce a lien incidental to a claim against such person or entity. I do not have a doubt but that admiralty has exclusive jurisdiction. See Gillam v. Parker, etc. (D.C.) 19 F.(2d) 358; Moran v. Sturges, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981; Penn Gen. Cas. Co. v. Penn, 294 U.S. 196, 55 S.

Ct. 386, 79 L.Ed. 850; DeLima v. Bidwell, 182 U.S. 1, at page 180, 21 S.Ct. 743, 45 L.Ed. 1041; The Moses Taylor, supra, 4 Wall. (71 U.S.) 411, 18 L.Ed. 397; The Hine v. Trevor, 4 Wall. (71 U.S.) 555, 18 L.Ed. 451; The Belfast, 7 Wall. (74 U.S.) 624, 19 L.Ed. 266; The Glide, 167 U.S. 606, 17 S.Ct. 930, 42 L.Ed. 296; Benedict on Admiralty (5th Ed.) § 23; Jervey v. The Carolina (D.C.) 66 F. 1013.

The contention of the respondent State that the vessel and seine net, were in "Custody of the Law" is not well founded. The director of fisheries can in no sense be construed an officer of the court holding the property under fictitious process to be ripened into a right in the future upon institution of forfeiture proceedings. He merely held the vessel and net, etc., solely for the purpose of instituting a plenary action. The vessel and seine net were not held for judicial execution necessary pursuant to execution of a legal writ. First Nat'l Bank v. Livingood, 83 Kan. 118, 109 P. 987. To be in custodia legis property must be taken by legal process. The Blairmore 1 (C.C.A.) 10 F. (2d) 35. The syllabus in Five Hundred And Twenty-Eight Pieces of Mahogany, 9 Fed.Cas. p. 200, No. 4,845, says: "Where possession of movable property has been changed, against the right of the true owner, by a maritime tort, * * * the owner may vindicate his title in a court of admiralty by a proceeding in rem." This is given acquiescence by Benedict (5th Ed.) p. 102. The charges in the libel, which upon the motion must be taken as true, clearly show wrongful taking of the vessel.

The Bessie Mac. was not, when attached by the United States marshal, "Under the authority of the Revenue Law," Rev.St. § 934 (28 U.S.C.A. § 747), and within the holding in Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390, but is within the holding in Ex parte Fassett, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087. Enforcement of the State's claim must be by plenary suit (The J. W. French [D.C.] 13 F. 916) or libel in condemnation by alleging and proving that the vessel was violating the state law and that the seizure was lawful, and afford the owner an opportunity to appear and make claim, and contest the State's accusation.

For the foregoing reasons the motion on special appearance is denied; and respondent is ruled to further plead within ten days.