**Nelson Baker HUNT and BP Exploration Company (Libya) Limited**

v.

**A CARGO OF PETROLEUM PRODUCTS LADEN ON the STEAM TANKER HILDA.**

**Civ. A. No. 73–1882.**

United States District Court, E. D. Pennsylvania.

June 17, 1974.

Raul Betancourt, Jr., Rawle & Henderson, Philadelphia, Pa., for plaintiffs.

James F. Young, Krusen Evans & Byrne, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

The ebb and flow of admiralty jurisdiction has not been characterized by the same predictability as the waters it governs.[1] Thus, the Supreme Court in Victory Carriers, Inc. v. Law, 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971) stated: "The historic view of this Court has been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States." A little more than a year later, however, the Court held that maritime tort jurisdiction did not exist, absent a significant relationship to traditional maritime activity, when an aircraft goes down on navigable waters or when negligence occurs while the aircraft is flying over such waters. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). These cases confirm Mr. Justice Holmes' statement in The Blackheath, 195 U.S. 361, 365, 25 S.Ct. 46, 47, 49 L.Ed. 236 (1904): "The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history."

Nor can we in seeking to ascertain the proper boundaries of admiralty jurisdiction take comfort from Professors Gilmore and Black's observation "that the important cases in admiralty are *not* the borderline cases on jurisdiction; these may exercise a perverse fascination in the occasion they afford for elaborate casuistry, but the main business of the [admiralty] court involves claims for cargo damage, collision, seaman's injuries and the like—all well and comfortably within the circle, and far from the penumbra." G. Gilmore & C. Black, The Law of Admiralty 24 n. 88 (1957). In this case having an admiralty lienage never clearly defined and an admiralty rationale never clearly articulated we are concerned with a method of process.

The question presented is whether admiralty jurisdiction comprehends a suit to try title to or the right to possession of cargo when the claim to the cargo is not based on the breach of a maritime contract or the commission of a maritime tort. We hold that admiralty does not encompass such a suit.

In this action the plaintiffs, Nelson Baker Hunt and BP Exploration Company (Libya) Limited, seek to adjudicate their right of title to and possession of a cargo of petroleum products laden on the steam tanker Hilda which ship was attached by this court when it entered the Port of Philadelphia.[2] It is claimed that

---

1. It should not be inferred from this statement that admiralty jurisdiction is defined by the ebb and flow of the tide, for this is certainly not the case. See The Daniel Ball, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1880); United States v. Stoeco Homes, Inc., 498 F.2d 597 (3 Cir. 1974).

2. By stipulation between the parties a bond has been substituted for the cargo.

the petroleum products have their source in an oil field, the Sarir Field, discovered by the plaintiffs in November 1961 and unlawfully seized in two stages by the Libyan government in December 1971 and June 1973. The plaintiffs' claim of title to and possession of the cargo is alleged to result from a deed dated December 18, 1957, granted by the Government of Libya, through its Petroleum Commission, to plaintiff Hunt. A one-half undivided interest in the deed was assigned by Hunt to BP on June 24, 1960, with the approval of the Government of Libya. The only jurisdiction alleged in the complaint is that in admiralty pursuant to Fed.R.Civ.P. 9(h).[3]

A claim to the cargo has been filed by Coastal States Marketing, Inc. as purchaser from a refinery at Priola, Italy. Coastal States has moved to dismiss for lack of jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1).

In admiralty suits to try title to property independent of questions concerning possession are referred to as petitory suits. A petitory suit must be based on a claim of legal title; the assertion of a mere equitable interest is not sufficient. See, The Captain Johnson, 64 F.Supp. 559 (D.N.J.1946). A possessory action is one in which a party seeks to adjudicate the right to possess property wrongfully taken. See Silver v. Sloop Silver Cloud, 259 F.Supp. 187 (S.D.N.Y.1966); 1 E. Benedict Admiralty § 73 (6th Ed. 1940). The nature of these actions and their recognition as part of admiralty jurisdiction of this country has been well established since Justice Story's decision sitting as a Circuit Justice in The Tilton, 23 F. Cas. p. 1277 (No. 14,054 C.C.Mass.1830). Petitory actions and actions for possession are *in rem* actions analogous to the common law remedies of replevin and detinue.[4] We must determine the circumstances in which admiralty provides for such suits.

A suit to try title to or possession of a ship wrongfully taken has long been considered within the jurisdiction of admiralty courts regardless of whether the claim to the ship is based on the breach of a maritime contract or the commission of a maritime tort. Ward v. Peck, 59 U.S. (18 How.) 267, 15 L.Ed. 383 (1855); The Tilton, *supra*; Gallagher v. Unenrolled Motor Vessel River Queen, 475 F.2d 117, 119 (5 Cir. 1973); Atamanchuck v. Atamanchuck, 61 F. Supp. 459 (D.N.J.1945); Gilmore and Black, The Law of Admiralty 24 (1957). The courts in sustaining admiralty jurisdiction in this instance recognize the maritime nature of questions involving the title and possession of ships. The courts' reasoning is analogous to that employed to sustain jurisdiction over questions involving injuries to seaman while in the performance of the ship's duties even though the injuries occur on land. See O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943). The questions raised in such actions bear a significant relationship to maritime service, commerce or navigation. As stated by Justice Story:

> Indeed, the titles to ships principally depend upon the maritime law, as recognised and enforced in the common law; and the admiralty does little the maritime law, so recognised and carry into effect the declarations of the maritime law, so recognized and enforced. No doubt exists, that the admiralty possesses authority to decree restitution of ships wrongfully withheld from the owners.

The Tilton, 23 Fed.Cas. *supra* at p. 1279. See also, Grigg v. The Clarissa Ann, 11 Fed.Cas. p. 47 (No. 5,826 E.D. Va.1877).

The question whether admiralty provides for jurisdiction to try title to or possession of property other than ships,

---

3. The complaint alleges that Hunt is a citizen of Texas and BP is a British Corporation. Coastal States in its answer states that it is a citizen of Texas.

4. Supplementary Rule D of the Federal Rules of Civil Procedure provides for attachment of the ship in a petitory or possessory suit.

such as the cargo in this case, absent the existence of a maritime tort or contract, is not as clear. Courts have adjudicated questions of title to and possession of cargo either when there existed a maritime tort or contract or when the question relating to the cargo was incident to matters clearly within the admiralty jurisdiction. *See generally,* 1 E. Benedict, Admiralty § 73 at 154 n. 11 (6th Ed. 1940). Thus, in Post v. Jones, 60 U.S. (19 How.) 150, 15 L.Ed. 618 (1856), the Court considered the claims of the owners of cargo sold to the claimants after the ship had become disabled in far off areas of the waters. The sale of the cargo by the master of the ship to the claimants was adjudged not to have passed valid title, and the claimants were therefore awarded only salvage. See also, American Insurance Co. v. Johnson, 1 Fed.Cas. pp. 665, 670 (No. 303 S.D.N.Y.1827). And in the Tietjen & Lang No. 2, 53 F.Supp. 459 (D.N.J. 1949), the title to equipment was adjudicated along with the issue of title to a derrick lighter which had been sold pursuant to fraudulent representations.

Courts in other situations, however, have clearly limited jurisdiction to questions involving maritime torts or contracts. In Five Hundred and Twenty Eight Pieces of Mahogany, 9 Fed.Cas. pp. 200, 201 (No. 4,845 D.Mass.1874), the court stated:

> [W]here the possession of movable property has been changed, against the right of the true owner, either by a maritime tort or by the breach of a maritime contract, to which the property was subject, the owner may vindicate his title in a court of admiralty, not only in personam, which is not doubted, but also in rem.

*See also,* The Bessie Mac, 21 F.Supp. 220 (D.Wash.1937); The Director, 26 F. 708, 712 (D.Oregon 1886); 1 Kent Comm. 379 n. b. (12 Ed. 1896). And in The Blairmore I, 10 F.2d 35 (2 Cir. 1925) the court held that a possessory action for chattels other than vessels was not maintainable in admiralty absent the existence of a maritime tort or

contract. *See also,* Wenberg v. A Cargo of Mineral Phosphate, 15 F. 285 (S.D. N.Y.1883) (admiralty jurisdiction does not exist over petitory or possessory suit for minerals extracted from islands in which a concession was granted libellant by French Government but was then fraudulently obtained by claimants since the suit was not based on maritime contract or tort).

■ Unlike an action to try title or possession to a ship, questions concerning title or possession of cargo not based on a maritime contract or tort do not bear a significant relationship to maritime commerce. Cargo obtains its maritime character solely because it is on the navigable waters. Questions involving its ownership or possession will depend upon relationships foreign to traditional maritime interests. This case presents an apt illustration. The merits of this case involve the legality of the actions by the Libyan Government in seizing the oil fields owned by the plaintiffs and the claimants title to the oil when purchased from a third party. Maritime interests will be of no concern to a just adjudication of the merits. For these reasons we conclude that as an admiralty court we lack jurisdiction.

In the alternative the plaintiffs have argued that their action is based on a maritime tort. It is argued that the claimant committed a maritime tort by taking wrongful possession of the cargo and continuing such possession on the navigable waters. In support of this position plaintiffs cite The Dauntless, 7 F. 366 (1881), decree dismissing libel, 19 F. 798 (E.D.N.Y.1883).

*The Dauntless* concerned the alleged unlawful taking of mineral phosphates from an island and carrying the phosphates by sea to New York. Although we question the court's conclusion in *The Dauntless,* we consider the case clearly distinguishable. The court was apparently swayed to find jurisdiction because the phosphate was taken from an island and immediately placed on a vessel. The vessel was a necessary instrument to successful consummation of

the tort. But the court itself characterized the kind of facts involved in the case before us as posing a different question. The court stated:

If the case were one of property stolen on shore and subsequently shipped on board a vessel, and the question were as to the right of the rightful owner of the property to reclaim it from the vessel by means of a posessory action in the admiralty, a different case would be presented.

*The Dauntless*, 7 F. *supra* at 367. The facts alleged in plaintiff's complaint do not even satisfy the jurisdictional requirement recognized in *The Dauntless*.

Finally, the plaintiffs contend that a maritime tort was committed when the claimant directed the Hilda's master not to proceed to ports in the United States and to return to Italy using the cargo if necessary for fuel. These facts came to light after the filing of the complaint when plaintiffs deposed the Hilda's master. Since these are matters outside the complaint we will not consider them on a motion to dismiss, but will allow plaintiffs time to amend the complaint if they so desire.