**HUP AIK HUAT TRADING PTE LTD., Plaintiff,**

v.

**900 BAGS OF MALABAR GARBLED END OF FRONT MATTER BLACK PEPPER IN OCEAN SHIPPING CONTAINERS NOS. TRIU3419945, MSCU2624506, and TPHU6233345, in rem, Defendant.**

**Civil No. H–00–1536.**

United States District Court, D. Maryland.

Aug. 7, 2000.

Jo Anne Zawitoski, Semmes, Bowen & Semmes, Baltimore, MD, for Plaintiff.

James W. Bartlett, III, Baltimore, MD, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Baltimore, MD, for Intervenor–Plainitff.

Leonard L. Gordon, Ed Scheideman, Piper & Marbury, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

In this admiralty action brought under 28 U.S.C. § 1333, plaintiff Hup Aik Huat Trading Pte Ltd. ("HAHT") has filed an *in rem* suit as a possessory and/or petitory action, pursuant to Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims. This *in rem* action has been brought against 900 Bags of Malabar Garbled Black Pepper in Ocean Shipping Containers Nos. TRIU3419945, MSCU2624506, and TPHU6233345 (referred to collectively as the "cargo"). Intervenor McCormick & Company, Inc. ("McCormick") has claimed superior title over HAHT to the pepper in Shipping Container No. TRUI3419945; Intervenor Foran Spice Company ("Foran") has claimed superior title over HAHT to the pepper in Shipping Container No. MSCU2624506, and Intervenor Kalustyan Corporation ("Kalustyan") has claimed superior title over HAHT to the pepper in Shipping Container No. TPHU6233345. All three of these claimants have been permitted to intervene in the case and assert their claims to the cargo.[1]

Presently pending before the Court is Intervenors' joint motion to dismiss for

---

1. McCormick, Foran and Kalustyan are referred to herein collectively as the "Intervenors."

lack of subject matter jurisdiction. Memoranda and exhibits in support of and in opposition to the motion have been filed. No hearing is necessary. *See* Local Rule 105.6. For the reasons to be stated herein, Intervenors' motion to dismiss will be denied.

## I

### *Facts* [2]

HAHT is a Singapore corporation engaged in the business of pepper trading. Namita Industrial & Trading Concepts Pte Ltd. ("Namita") is a Singapore corporation engaged in the business of importing and exporting commodities like pepper. On January 1, 2000, HAHT entered into a contract with Namita for the purchase of a cargo of twenty-two ocean containers of bagged pepper.

Pursuant to the contract, HAHT was to purchase certain lots of bagged pepper in India identified by Namita. In order to facilitate such purchase, HAHT was to open letters of credit with a Singapore bank. In turn, Namita was responsible for arranging for the shipment of the pepper to the United States, where it would be resold. In order for Namita to re-sell the pepper, it would first have to purchase the pepper from HAHT for the value of the letters of credit plus a two-percent mark up. However, until Namita purchased the pepper from HAHT, HAHT would retain title to the pepper by holding the original sale documents and the original negotiable bills of lading for the goods. Once payment was received by HAHT, it would provide Namita with the original sale documents and bills of lading so that Namita could in turn transfer those bills of lading to re-purchasers for value. The original bills of lading would then be presented by the re-purchasers to ocean carriers at ports of discharge in the United States in exchange for the pepper. The terms of the contract gave Namita up to sixty days after the date of the issuance of bills of lading in which to pay HAHT.

HAHT opened the requisite letters of credit, extending approximately $2 million in credit for the purchase of the pepper from various Indian sellers. Namita then caused an Indian freight forwarder, Sanvi Shipping Pvt. Ltd. ("Sanvi"), to issue "House" bills of lading for the bagged pepper on behalf of L.C. Shipping, Inc., an American non-vessel operating common carrier operating out of Great Neck, New York. These House bills showed that L.C. Shipping would be responsible for having the goods transported from India to various ports in the United States, including Baltimore. The House bills were issued as freight prepaid, negotiable bills of lading consigned "to the order" of the Singapore bank under the HAHT letters of credit. Namita caused these House bills to be released to the Indian sellers of the pepper, who presented them for payment to the Singapore bank under the letters of credit. The bank then transferred the House bills to HAHT. These are the bills currently held by HAHT.

However, without the knowledge of HAHT, Namita and Sanvi fraudulently caused a second set of bills of lading to be issued for the same bags of pepper by several ocean carriers, including Mediterranean Shipping Company S.A. This second set of bills, unlike the set in HAHT's possession, are non-negotiable. Furthermore, the bills held by HAHT were all issued before the second set of bills were issued insofar as each individual bill of lading pertains to individual ocean containers of pepper. The second set of bills show Sanvi as the shipper of the pepper and Browning Corporation Ltd. ("Browning") as the consignee. The second set of bills were then released by Sanvi to Namita and Browning, allowing Namita and Browning to re-sell the pepper to purchas-

---

**2.** The facts and all reasonable inferences, as discussed herein, will be viewed in the light most favorable to HAHT, as the party opposing Intervenors' motion. *Cf. Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 304–21 (1990).

ers in the United States and retain the proceeds of such sales without ever having to pay HAHT. The re-purchasers of pepper would then be entitled to present the second set of bills received from Namita and Browning to ocean carriers upon their arrival at ports of the United States, allowing the re-purchasers to take possession of the pepper.

Shipment of the twenty-two containers of pepper from India began in March of 2000. Sixty days after the shipments from India began and following HAHT's discovery of the fraudulent issuance of the second bills of lading by Sanvi, HAHT notified all of the ocean carriers involved of the suspected fraud and made attempts to lay claim to the containers shipped. However, as a result of the payment grace period in its contract with Namita, HAHT did not discover the fraud until all but four containers had already been released to re-purchasers under the fraudulent bills of lading. HAHT has been able to recover one of these containers from Evergreen Lines. The remaining three containers (the cargo at issue here) either were already located in Baltimore or were about to be discharged from a vessel and stored here.

On May 25, 2000, HAHT filed in this Court its verified complaint *in rem* pursuant to Supplemental Rule D. In its complaint, HAHT requested (1) that process *in rem* and a warrant of arrest immediately issue for the cargo at issue, (2) that any person claiming any interest in the cargo show cause as to why possession of such cargo should not be delivered to HAHT, and (3) that the Court decree that the cargo be delivered to HAHT "as having full title thereto." On that same date, Judge Legg of this Court entered an Order directing the issuance of a warrant of arrest for the cargo and the appointment of the United States Marshal as custodian.

On June 2, 2000, HAHT moved the Court to allow for the interlocutory sale of the cargo, asserting that the cargo would be subject to deterioration and/or decay during the pendency of the action and that the costs of keeping the cargo in *custodia legis* would be excessive. That motion was granted by Judge Garbis of this Court, who ordered that the cargo be sold at public action within twenty business days.[3]

On June 7, 2000, McCormick filed a claim for the cargo contained in all three containers. On June 9, 2000, McCormick amended its claim, laying claim only to the cargo in one of the containers. On that same date, Kalustyan also filed a claim for the cargo in another of the containers in Baltimore, as did Foran for the cargo in the remaining container. McCormick, Kalustyan and Foran moved on June 14, 2000 to intervene in this action, and their motions have been granted.

II

*Applicable Principles of Law*

■ It is black letter law that the plaintiff in an action has the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), F.R.Civ.P., a district court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* A district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* In determining whether to dismiss a complaint, a court must view the material allegations in a light most favorable to the plaintiff, with the alleged facts accepted as true. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Prac-

---

**3.** The sale finally took place on June 29, 2000, and the proceeds of the sale have been deposited in the registry of the Court.

tice and Procedure § 1357, at 304–21 (1990). The pleading requirements necessary to establish admiralty subject matter jurisdiction are very liberal. *Moore–McCormack Lines, Inc. v. Int'l Operating Co., Inc.*, 619 F.Supp. 1406, 1413–1414 (S.D.N.Y.1985).

Supplemental Rule D provides, in pertinent part that:

> In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property ... the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties.

■ Admiralty jurisdiction over a possessory suit under Supplemental Rule D seeking recovery of cargo or other maritime property does not automatically vest in the federal courts simply because such items may be found aboard a ship. *See* Moore's Federal Practice § 705.05[2][b][ii] (3d ed.2000). Rather, a possessory action to regain cargo or other maritime property "can be maintained only if the allegedly wrongful possession resulted from a maritime tort or breach of a maritime contract." *Id.; see also Hunt v. A Cargo of Petroleum Products Laden on the Steam Tanker Hilda*, 378 F.Supp. 701, 703–704 (E.D.Pa.1974).

■ A maritime contract is "one whose subject matter is 'necessary to the operation, navigation, or management of a ship.'" *Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1276 (11th Cir.1998). Bills of lading have been held by courts to constitute maritime contracts. *Logistics Management, Inc. v. One (1) Pyramid Tent Arena*, 86 F.3d 908, 912 (9th Cir. 1996) (citing *The Eddy*, 72 U.S. (5 Wall.) 481, 494, 18 L.Ed. 486 (1866) (holding that "contracts of affreightment" are maritime contracts over which the courts of admiralty have jurisdiction)).

Generally, bills of lading can serve three distinct functions: "[f]irst a receipt for the goods; second, a contract for their carriage; and, third, documentary evidence of title to the goods." *In re Chateaugay Corp.*, 78 B.R. 713, 717 (Bankr.S.D.N.Y. 1987) (citation omitted). Bills of lading can be negotiable bills, meaning that they were consigned "to order," or non-negotiable bills, often referred to as "straight bills." Thomas Schoenbaum, author of *Admiralty and Maritime Law*, explains the differences between negotiable and non-negotiable bills of lading:

> The negotiability feature of the order [negotiable] bill of lading means that it functions as a *document of title*. The goods are merged with the instrument and the owner of the bill of lading has title to the goods. The seller can thus retain control of the goods in transit by requiring the payment of the purchase price before the bill is delivered to the buyer ... The goods can be transferred or resold by negotiation of the bill ... A straight bill of lading, on the other hand, is not negotiable.

*See* T. Schoenbaum, 2 *Admiralty and Maritime Law* § 10–11 at 48–49 (2d ed.1994). (Emphasis in original).

■ A dispute over title to or possession of a bill of lading, a maritime contract, clearly implicates the fundamental federal interest in the protection of maritime commerce. *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 2000 WL 770546, at *5 (2nd Cir. May 25, 2000) (involving action pursuant to Supplemental Rule D brought against a set of negotiable bills of lading to determine the rightful possessor of such bills).

### III

#### *Discussion*

■ In support of their joint motion to dismiss for lack of subject matter jurisdiction, the Intervenors argue that this Court does not have admiralty jurisdiction because plaintiff's claim for possession does

not involve the breach of a maritime contract nor does it involve a maritime tort. The Intervenors note that plaintiff's primary contention in this action is that it was defrauded by foreign parties as a result of actions taken by them in foreign lands. According to the Invervenors, plaintiff's claim for possession of the cargo is posited on "land-based" transactions which cannot serve as the basis for the exercise by this Court of admiralty jurisdiction.[4]

Replying to those arguments, plaintiff asserts that it is the holder of negotiable bills of lading covering the cargo and that Intervenors are holders of fraudulent, non-negotiable bills of lading. Plaintiff contends that its claim is to possession of the cargo under its negotiable bills of lading. According to plaintiff, the legal issue to be decided by the Court is whether the holder of later issued non-negotiable bills of lading can acquire a right to the goods covered by those bills superior to that of the holder of earlier issued negotiable bills of lading for the same goods where the later holder purchased the cargo from an alleged thief.

On the record here, this Court concludes that admiralty jurisdiction exists and that this Court may proceed to hear and decide the claims asserted by the parties. The Court is satisfied that the dispute arises as a result of a maritime contract over which an admiralty court has jurisdiction.

In its verified complaint, plaintiff goes into great detail in presenting the factual underpinnings of this action. Plaintiff alleges that a series of fraudulent transactions caused it to be deprived of payment for certain cargo for which it currently holds negotiable bills of lading. However, from a reading of the complaint, it is apparent that plaintiff's claim is not one of fraud but rather one of superior title. The complaint requested that process *in rem* and warrants of arrest issue for the cargo, and those requests have already been

granted by the Court. Further, plaintiff has prayed:

> (3) That any person claiming to have any interest in [the cargo] ... show cause why possession of the [cargo] should not be delivered to Plaintiff as *having full title* thereto; (4) That this Court decree that [the cargo] are delivered to Plaintiff as *having full title thereto.* (Emphasis added).

As such, it is clear that, contrary to the Intervenors' characterization of this action, plaintiff's complaint is not seeking to recover the cargo at issue based on fraudulent acts committed by parties also claiming title to the goods. Rather, plaintiff is here asking the Court to determine, in view of the existence of two different sets of bills of lading, the party which has superior title to the cargo at issue.

Courts have consistently held that bills of lading constitute "maritime contracts." *Logistics*, 86 F.3d at 912. Plaintiff is here claiming possession and title to the cargo at issue under the terms of the negotiable bills of lading in its possession. These bills constitute maritime contracts which potentially can also serve as documentary evidence of title to the cargo. *In re Chateaugay Corp.*, 78 B.R. at 717.

Other courts have determined that a federal court has admiralty jurisdiction under Supplemental Rule D where there is a dispute as to the rightful possessor of negotiable bills of lading. *See Thypin*, 215 F.3d 273. Negotiable bills of lading may properly be said to have "merged" with the goods with which they are connected. *See* Schoenbaum, 2 *Admiralty and Maritime Law*, § 10–11 at 48–49. It therefore necessarily follows that, since federal courts possess admiralty jurisdiction under Supplemental Rule D over cases involving disputes as to the possession of negotiable bills of lading, disputes as to the possession of the cargo with which such bills have merged would also be subject to the

---

4. Intervenors also present arguments which go to the merits of plaintiff's claim. Since these arguments do not relate to the jurisdictional issues presented by their motion to dismiss, they will not be addressed here.

Court's admiralty jurisdiction. In this particular case, the bills of lading themselves are at the very heart of the dispute between the parties.

Accordingly, this Court concludes that plaintiff's claim is one brought under the terms of the negotiable bills of lading in its possession, that these bills rightfully qualify as maritime contracts and that this Court therefore possesses admiralty jurisdiction in this case. In view of this Court's determination that this case involves the alleged breach of a maritime contract, it is not necessary to consider plaintiff's alternative argument that admiralty jurisdiction exists because a maritime tort is also at issue.

For the reasons stated, it is this _____ day of August, 2000 by the United States District Court for the District of Maryland,

ORDERED that the joint motion to dismiss for lack of subject matter jurisdiction of Intervenor–Claimants McCormick & Company, Inc., Foran Spice Co. and Kalustyan Corporation is hereby denied.